# CALLAN *v.* WILSON.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 1318.   Argued January 16, 1888. — Decided May 14, 1888.

The provision in article 3 of the Constitution of the United States that "the trial of all crimes, except in cases of impeachment, shall be by jury," is to be construed in the light of the principles which, at common law, determined whether or not a person accused of crime was entitled to be tried by a jury; and thus construed, it embraces not only felonies punishable by confinement in the penitentiary, but also some classes of misdemeanors the punishment of which may involve the deprivation of the liberty of the citizen.

The provisions in the Constitution of the United States relating to trial by jury are in force in the District of Columbia.

A person accused of a conspiracy to prevent another person from pursuing a lawful avocation, and, by intimidation and molestation, to reduce him to beggary and want, is entitled, under the provisions of the Constitution of the United States, to a trial by jury.

The Police Court of the District of Columbia is without constitutional power to try, convict, and sentence to punishment a person accused of a conspiracy to prevent another person from pursuing his calling and trade anywhere in the United States and to boycott, injure, molest, oppress, intimidate and reduce him to beggary and want, although the Revised Statutes relating to the District of Columbia provide that "any party deeming himself aggrieved by the judgment of the Police Court may appeal to the Supreme Court" of the District.

THE court stated the case as follows:

This was an appeal from a judgment refusing, upon writ of *habeas corpus*, to discharge the appellant from the custody of the appellee as Marshal of the District of Columbia. It appears that by an information filed by the United States in the Police Court of the District, the petitioner, with others, was charged with the crime of conspiracy, and having been found guilty by the court was sentenced to pay a fine of twenty-five dollars, and upon default in its payment to suffer imprisonment in jail for the period of thirty days. He perfected an appeal to the Supreme Court of the District, but having subsequently withdrawn it, and having refused to pay the fine im-

posed upon him, he was committed to the custody of the Marshal, to the end that the sentence might be carried into effect.

The contention of the petitioner was that he is restrained of his liberty in violation of the Constitution. The various grounds of this contention will be considered, so far as it is necessary to do so, after we shall have ascertained the precise nature of the offence of which the petitioner was found guilty.

The information showed that one Franz Krause, Louis Naecker, August Naecker, Charles Arndt, Louis Naecker, Jr., Herman Feige, Gustav A. Bruder, Fritz Boetcher, Herman Arndt, Julius Schultz, Louis Brandt, Caspar Windus, Ernest Arndt, and Christian Feige were, during the months of July and August, 1887, residents of this District, each pursuing the calling of a musician;

That, during those months, there was in the District an association or organization of musicians, by the name of "The Washington Musical Assembly, No. 4308, K. of L.," containing one hundred and fifty members, and a branch of a larger association known as "The Knights of Labor of America," extending throughout the United States, and having a membership of five hundred thousand persons, of which ten thousand were residents of this District;

That, during the period named, Edward C. Linden, Louis P. Wild, John N. Pistorio, James C. Callan (the appellant), Joseph B. Caldwell, George N. Sloan, John Fallon, Anton Fischer and Frank Pistorio were members of the said local assembly, each pursuing the calling of a musician;

That, on the 17th of July, 1887, said local association imposed upon Franz Krause, one of its members, two fines, one of $25 and the other of $50, which he refused to pay upon the ground that they were illegal; and

That said Linden, Wild, Pistorio, Callan, Caldwell, Sloan, Fallon, Fischer, with sundry other persons, whose names were unknown, did, on the 7th day of August, 1887, unlawfully and maliciously combine, conspire, and confederate together to extort from Krause the sum of $75 on account of said fines; to

prevent the parties first above named — Krause, Naecker, and others — and each of them, from pursuing their calling and trade anywhere in the United States; and to "boycott," injure, molest, oppress, intimidate, and reduce to beggary and want, not only said persons and each of them, but any person who should work with or for them, or should employ them or either of them.

The information charged that the manner in which the defendants, so conspiring, proposed to effect said result, was to refuse to work as musicians, or in any other capacity, with or for the persons first above named, or with or for any person, firm, or corporation, working with or employing them; to request and procure all other members of said organizations, and all other workmen and tradesmen, not to work as musicians, or in any capacity, with or for them or either of them, or for any person, firm, or corporation that employed or worked with them or either of them, and to warn and threaten every person, firm, or corporation that employed or proposed to employ the said persons, or either of them, that if they did not forthwith cease to so employ them and refuse to employ them, and each of them, such person, firm, or corporation, so warned and threatened, would be deprived of any custom or patronage, as well from the persons so combining and conspiring as from all other members of said organization in and out of the District.

The information further charged that, on the 8th day of August, 1887, the said persons, among whom was the appellant, in execution of the purpose of said conspiracy, combination, and confederacy, sent and delivered to each member of "The Washington Musical Assembly, No. 4308, K. of L.," and to divers other persons in the District whose names are unknown, a certain printed circular of the tenor following:

"SANCTUARY WASHINGTON MUSICAL ASSEMBLY, 4308, K. OF L.,
  "WASHINGTON, D. C., *August* 8th, 1887.

"Dear Sir and Brother: In accordance with a resolution of this assembly and in compliance with the constitution and by-laws of the order, you are hereby notified that the following-

named members of this assembly are hereby suspended for having performed with F. Krause, in direct violation of the official notice of said Krause's suspension from this assembly. You will, therefore, not engage or perform, directly or indirectly, with any of them — Louis Naecker, August Naecker, Charles Arndt, Louis Naecker, Jr., Herman Feige, Gus. A. Bruder, Fritz Boetcher, Herman Arndt, Julius Schultz, Louis Brandt, Caspar Windus, Ernest Arndt, Christian Feige.

" By order of the assembly.

"[SEAL.]         E. C. LINDEN, JR.,
             " *Recording Sec'y.*"

To this information the defendants interposed a demurrer, which was overruled. They united in requesting a trial by jury. That request was denied, and a trial was had before the court, without the intervention of a jury, and with the result already stated.

*Mr. J. H. Ralston* for appellant. *Mr. Charles S. Moore* was with him on the brief.

*Mr. Assistant Attorney General Maury* for appellee.

The conspiracy laid in the information is not an "infamous crime," within the meaning of the Fifth Amendment to the Constitution, the punishment of the offence not being by confinement in a penitentiary, and the offence itself not being *crimen falsi. Ex parte Wilson,* 114 U. S. 417: *Mackin* v. *United States,* 117 U. S. 348.

It would seem that the Constitution does not require that the right of trial by jury shall be secured to the people of this District. Article 3, § 2, does not appear to contain such a requirement, when attentively considered, in the light of contemporaneous construction.

Mr. Madison in the first Congress moved the appointment of a select committee on the subject of amending the Constitution. 1 Debates in Congress, O. S. 448. This and the amendments proposed by the several States were referred to a committee. Ib. 690

The articles of the committee's report covering, *inter alia*, the third paragraph of the second section of the third article of the Constitution are the thirteenth and fourteenth, and are as follows :

" THIRTEENTH. In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial ; to be informed of the nature and cause of the accusation ; to be confronted with the witnesses against him ; to have compulsory process for obtaining witnesses in his favor ; and to have the assistance of counsel for his defence.

" FOURTEENTH. The trial of all crimes (except in cases of impeachment, and in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger) shall be by an impartial jury *of the vicinage*, with the requisite of unanimity for conviction, the right of challenge, and other accustomed requisites ; and no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment by a grand jury ; *but if a crime be committed in a place in the possession of an enemy, or in which an insurrection may prevail, the indictment and trial may by law be authorized in some other place* WITHIN THE SAME STATE."

Now it was evidently upon the idea that what was contained in these two articles was more than the full equivalent of the third paragraph of the second section of the third article of the Constitution, that the committee recommended that that paragraph should be stricken out and article 13 of the report inserted in its room.    1 Debates, O. S. 784.

It is manifest that the sole purpose of the committee was to provide for the trial by jury of crimes committed *within the States*, and nowhere else, and this intention is carried out by the provision of the Sixth Amendment securing the right to trial by jury " *in the State and district wherein the crime shall have been committed.*"

But to complete the history of this Sixth Amendment, it is necessary to lay before the court the amendment recommended by Mr. Madison for insertion in the Constitution in place of the third clause or paragraph of the second section of the

third article, which was to be stricken out. It is as follows :

" *Seventhly*, That in article 3, section 2, the third clause be struck out, and in its place be inserted the clauses following, to wit :

" The trial of all crimes (except in cases of impeachments, and cases arising in the land or naval forces, or the militia when on actual service in time of war or public danger), shall be by an impartial jury of freeholders of the vicinage, with the requisite of unanimity for conviction, of the right of challenge, and other accustomed requisites; and in all crimes punishable with loss of life or member, presentment or indictment by a grand jury shall be an essential preliminary, provided that in cases of crimes committed within any county which may be in possession of an enemy, or in which a general insurrection may prevail, the trial may by law be authorized in some other county of the same State, as near as may be to the seat of the offence.

" In cases of crimes committed *not within any county*, the trial may by law be *in such county* as the laws shall have prescribed. In suits at common law, between man and man, the trial by jury as one of the best securities to the rights of the people, ought to remain inviolate."

It would seem from the context that the reference to " crimes committed *not within any county* " is, as in the previous paragraph, to crimes committed within the jurisdiction of a State, although without the limits of a county, as, for example, crimes committed on the high seas within the limit up to which the state law is allowed to have effect. The subsequent words that in such cases " the trial may by law be *in such county* as the laws shall have prescribed." would seem to call for that meaning.

But, supposing a constitutional guaranty of trial by jury to exist, it has not been denied.

The language of the Sixth Amendment is " *shall enjoy the right* " to a trial by jury. The original language of the Constitution was that " the trial of all crimes except in cases of impeachment *shall* be by jury."

This marked change of phraseology could not have been adopted without an intention to convey in the amendment a sense different from that of the third article.  We know from the debates in the House (the Senate sat at that time with closed doors) that the disposition among the friends of the Constitution was to make no changes in it that could possibly be avoided, which is an additional argument strongly in favor of our position.

We submit, then, that it is clear that the requirement of the Sixth Amendment that the accused shall *enjoy the right* of trial by jury is a *lex pro se introducta* which is largely subject to the will of the accused, and not a mode of trial forced upon him as it was by the provision of the Constitution which was supplanted by the Amendment.

This being established, we have made a great stride towards the solution of the question in hand.

The legislation complained of is not a novelty, but has its exemplar in many of the States.

The offences to which the jurisdiction of the police court extends are " simple assaults and batteries and all other misdemeanors not punishable by imprisonment in the penitentiary ; and of all offences against the laws and ordinances of the District in force therein."  § 1049, Rev. Stat. District of Columbia.

Any person who feels aggrieved by the judgment of the police court may appeal to the Supreme Court of the District, § 1073, where his appeal shall be tried by a jury " *as though the case had originated therein*, and the judgment of the Supreme Court shall be final in the case."  Section 773.

Mr. Dillon in his work on Municipal Corporations, Vol. 1, § 367, thus states the law with reference to this kind of legislation after a survey of the authorities.  He says: " It is, however, the prevailing doctrine that although the charge or matter in the municipal or local courts be one in respect of which the party is entitled to a trial by jury, yet if by an appeal, clogged with no unreasonable restrictions, he can have such a trial as a matter of right in the appellate court, this is sufficient, and his constitutional right to a jury trial is not invaded by the summary proceeding in the first instance.

See, also, *City of Emporia* v. *Volmer*, 12 Kansas, 622; *Byers* v. *Commonwealth*, 42 Penn. St. 89; *McGear* v. *Woodruff*, 33 N. J. Law (4 Vroom), 213; *State* v. *Young*, 3 Kansas, 445; *Jones* v. *Robbins*, 8 Gray, 329; *Commonwealth* v. *Whitney*, 108 Mass. 5; *Dillingham* v. *State*, 5 Ohio St. 280; Cooley's Const. Lim. [410] note 5, and 507, 5th ed.

The only case opposed to the view contended for by us is *Ex parte Dana*, 7 Ben. 1, where it was held that the very legislation now in question was unconstitutional on the ground that the guaranty of jury trial cannot be satisfied, at least in criminal cases, by the mere privilege to have a trial by jury on condition of first submitting to a trial without it, and then, in case of conviction, taking an appeal.

It is proper to call the attention of the court to the view, supported by authority, that the guaranty of trial by jury has never been understood to embrace petty offences. *Byers* v. *Commonwealth*, 42 Penn. St. 89, *per* Strong J.; *McGear* v. *Woodruff*, 33 N. J. Law (4 Vroom), 213.

Mr. Justice Harlan, after stating the case as above reported, delivered the opinion of the court.

It is contended by the appellant that the Constitution of the United States secured to him the right to be tried by a jury, and, that right having been denied, the police court was without jurisdiction to impose a fine upon him, or to order him to be imprisoned until such fine was paid. This precise question is now, for the first time, presented for determination by this court. If the appellant's position be sustained, it will follow that the statute, (Rev. Stat. Dist. Col. § 1064,) dispensing with a petit jury, in prosecutions by information in the police court, is inapplicable to cases like the present one.

The third article of the Constitution provides that "the trial of all crimes, except in cases of impeachment, shall be by jury, and such trial shall be held in the State where the said crimes shall have been committed; but when not committed within any State, the trial shall be at such place or places as the Congress may by law have directed." The Fifth Amend-

ment provides that no person shall "be deprived of life, liberty, or property, without due process of law." By the Sixth Amendment it is declared that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."

The contention of the appellant is, that the offence with which he is charged is a "crime" within the meaning of the third article of the Constitution, and that he was entitled to be tried by a jury; that his trial by the police court, without a jury, was not "due process of law" within the meaning of the Fifth Amendment; and that, in any event, the prosecution against him was a "criminal prosecution," in which he was entitled, by the Sixth Amendment, to a speedy and public trial by an impartial jury.

The contention of the government is, that the Constitution does not require that the right of trial by jury shall be secured to the people of the District of Columbia; that the original provision, that when a crime was not committed within any State "the trial shall be at such place or places as the Congress may by law have directed," had, probably, reference only to offences committed on the high seas; that, in adopting the Sixth Amendment, the people of the States were solicitous about trial by jury in the States and nowhere else, leaving it entirely to Congress to declare in what way persons should be tried who might be accused of crime on the high seas, and in the District of Columbia and in places to be thereafter ceded for the purposes, respectively, of a seat of government, forts, magazines, arsenals, and dock-yards; and, consequently, that that Amendment should be deemed to have superseded so much of the third article of the Constitution as relates to the trial of crimes by a jury.

Upon a careful examination of this position we are of opin-

ion that it cannot be sustained without violence to the letter and spirit of the Constitution.

The third article of the Constitution provides for a jury in the trial of "all crimes, except in cases of impeachment." The word "crime," in its more extended sense, comprehends every violation of public law; in a limited sense, it embraces offences of a serious or atrocious character. In our opinion, the provision is to be interpreted in the light of the principles which, at common law, determined whether the accused, in a given class of cases, was entitled to be tried by a jury. It is not to be construed as relating only to felonies, or offences punishable by confinement in the penitentiary. It embraces as well some classes of misdemeanors, the punishment of which involves or may involve the deprivation of the liberty of the citizen. It would be a narrow construction of the Constitution to hold that no prosecution for a misdemeanor is a prosecution for a "crime" within the meaning of the third article, or a "criminal prosecution" within the meaning of the Sixth Amendment. And we do not think that the amendment was intended to supplant that part of the third article which relates to trial by jury. There is no necessary conflict between them. Mr. Justice Story says that the amendment, "in declaring that the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State or district wherein the crime shall have been committed, (which district shall be previously ascertained by law,) and to be informed of the nature and cause of the accusation, and to be confronted with the witnesses against him, does but follow out the established course of the common law in all trials for crimes." Story on the Constitution, § 1791. And as the guarantee of a trial by jury, in the third article, implied a trial in that mode and according to the settled rules of the common law, the enumeration, in the Sixth Amendment, of the rights of the accused in criminal prosecutions, is to be taken as a declaration of what those rules were, and is to be referred to the anxiety of the people of the States to have in the supreme law of the land, and so far as the agencies of the General Government were concerned, a full and distinct recognition of those

rules, as involving the fundamental rights of life, liberty, and property. This recognition was demanded and secured for the benefit of all the people of the United States, as well those permanently or temporarily residing in the District of Columbia, as those residing or being in the several States. There is nothing in the history of the Constitution or of the original amendments to justify the assertion that the people of this District may be lawfully deprived of the benefit of any of the constitutional guarantees of life, liberty, and property — especially of the privilege of trial by jury in criminal cases. In the Draft of a Constitution reported by the Committee of Five on the 6th of August, 1787, in the convention which framed the Constitution, the 4th section of article XI read that "the trial of all criminal offences (except in cases of impeachment) shall be in the States where they shall be committed; and shall be by jury." 1 Elliott's Deb., 2d ed., 229. But that article was, by unanimous vote, amended so as to read: "The trial of all crimes (except in cases of impeachment) shall be by jury; and such trial shall be held in the State where the said crimes shall have been committed; but when not committed within any State, then the trial shall be at such place or places as the legislature may direct." Id. 270. The object of thus amending the section, Mr. Madison says, was "to provide for trial by jury of offences committed out of any State." 3 Madison Papers, 144. In *Reynolds* v. *United States*, 98 U. S. 145, 154, it was taken for granted that the Sixth Amendment of the Constitution secured to the people of the Territories the right of trial by jury in criminal prosecutions; and it had been previously held in *Webster* v. *Reid*, 11 How. 437, 460, that the Seventh Amendment secured to them a like right in civil actions at common law. We cannot think that the people of this District have, in that regard, less rights than those accorded to the people of the Territories of the United States.

It is next insisted that the constitutional guarantee of trial by jury in all criminal prosecutions — even supposing it to exist for the people of the District — has not been denied. Passing by so much of the argument as rests upon the slight

difference in phraseology between the third article and the Sixth Amendment — the former declaring that the trial of all crimes "shall be" by jury, and the latter that the accused shall "enjoy the right" to trial in that mode — we come to the consideration of the main proposition advanced, on behalf of the government, upon this branch of the case. It is this: That the requirements of the Constitution are fully met, where the accused is accorded, at some stage of the prosecution against him, the right of trial by jury. Such right, it is argued, is sufficiently recognized in the following sections of the Revised Statutes of the District of Columbia, defining and regulating the power and jurisdiction of the police court:

"Sec. 1073. Any party deeming himself aggrieved by the judgment of the police court may appeal to the Supreme Court.

"Sec. 1074. In all appeals the party applying for appeal shall enter into recognizance, with sufficient surety to be approved by the judge, for his appearance at the criminal term of the Supreme Court then in session, or at the next term thereof if the criminal term be not then in session, there to prosecute the appeal and to abide by the judgment of the Supreme Court.

"Sec. 1075. Upon such recognizance being given all further proceedings in police court shall be stayed."

"Sec. 1077. Upon the failure of any party appealing from the judgment of the police court to the Supreme Court to enter into recognizance, as provided for in section ten hundred and seventy-four, he shall be committed to jail to await his trial upon his appeal, and the trial shall be had in the Supreme Court as though such recognizance had been entered into."

"Sec. 773. Appeals from the police court shall be tried on the information filed in the court below, certified to Supreme Court, by a jury in attendance thereat, as though the case had originated therein, and the judgment in the Supreme Court shall be final in the case."

These provisions, undoubtedly, secure the right of appeal from the police court to the Supreme Court of the District, and a trial by jury in the latter court. But the fact remains

that the accused may, under the statute, be tried in the court of original jurisdiction, upon the issue of guilt or innocence; and by its judgment, unless he gives security for his appearance in another court, he may be deprived of his liberty. The police court is not, in such cases, an examining court merely, but a trial court, in the fullest sense of those words.

According to many adjudged cases, arising under constitutions which declare, generally, that the right of trial by jury shall remain inviolate, there are certain minor or petty offences that may be proceeded against summarily, and without a jury; and, in respect to other offences, the constitutional requirement is satisfied if the right to a trial by jury in an appellate court is accorded to the accused. *Byers* v. *Commonwealth*, 42 Penn. St. 89, 94, affords an illustration of the first of the above classes. It was there held that while the founders of the Commonwealth of Pennsylvania brought with them to their new abode the right of trial by jury, and while that mode of trial was considered the right of every Englishman, too sacred to be surrendered or taken away, "summary convictions for petty offences against statutes were always sustained, and they were never supposed to be in conflict with the common-law right to a trial by jury." So, in *State* v. *Glenn*, 54 Maryland, 572, 600, 605, it was said that "in England, notwithstanding the provision in the Magna Charta of King John, art. 46, and in that of 9 Hen. 3, c. 29, which declares that no freeman shall be taken, imprisoned, or condemned, 'but by lawful judgment of his peers, or by the law of the land,' it, has been the constant course of legislation in that kingdom, for centuries past, to confer summary jurisdiction upon justices of the peace for the trial and conviction of parties for minor and statutory police offences. . . . And when it is declared that the party is entitled to a speedy trial by an impartial jury, that must be understood as referring to such crimes and accusations as have, by the regular course of the law and the established modes of procedure, as theretofore practised, been the subjects of jury trial. It could never have been intended to embrace every species of accusation' involving either criminal or penal consequences." So, also, in New

Jersey, where the constitution guaranteed that "the right of trial by jury shall remain inviolate," the court said: "Extensive and summary police powers are constantly exercised in all the States of the Union for the repression of breaches of the peace and petty offences, and these statutes are not supposed to conflict with the constitutional provisions securing to the citizen a trial by jury. . . . This constitutional provision does not prevent the enforcement of the by-laws of a municipal corporation without a jury trial." *McGear* v. *Woodruff*, 4 Vroom, 213, 217. In *State* v. *Conlin*, 27 Vermont, 318, 323, the court sustains the right of the legislature to provide for the punishment of minor offences, having reference to the internal police of the State, "with fine only, or imprisonment in the county jail for a brief and limited period." See, also, *Williams* v. *Augusta*, 4 Georgia, 509.

The doctrines of many of the cases are thus summarized by Mr. Dillon in his work on Municipal Corporations (Vol. I, § 433): "Violations of municipal by-laws proper, such as fall within the description of municipal police regulations, as, for example, those concerning markets, streets, water-works, city officers, etc., and which relate to acts and omissions that are not embraced in the general criminal legislation of the State, the legislature may authorize to be prosecuted in a summary manner, by and in the name of the corporation, and need not provide for a trial by jury. Such acts and omissions are not crimes or misdemeanors to which the constitutional right of trial by jury extends."

The same author says, in respect to the other class of cases above referred to: "It is, however, the prevailing doctrine, that although the charge or matter in the municipal or local courts be one in respect of which the party is entitled to a trial by jury, yet if by an appeal, clogged with no unreasonable restrictions, he can have such a trial as a matter of right in the appellate court, this is sufficient, and his constitutional right to a jury trial is not invaded by the summary proceedings in the first instance." Vol. I, § 439. See also *City of Emporia* v. *Volmer*, 12 Kansas, 622, 630. Perhaps the strongest expressions, in this direction, are to be found in *Jones*

v. *Robbins*, 8 Gray, 329, 341, in which it was said, on behalf of the majority of the Supreme Judicial Court of Massachusetts: "And we believe it has been generally understood and practised here and in Maine, and perhaps in other States having a similar provision, that as the object of the clause is to secure a benefit to the accused, which he may avail himself of or waive, at his own election; and as the purpose of the provision is to secure the right, without directing the mode in which it shall be enjoyed; it is not violated by an act of legislation, which authorizes a single magistrate to try and pass sentence, provided the act contains a provision that the party shall have an unqualified and unfettered right of appeal, and a trial by jury in the appellate court, subject only to the common liability to give bail, or to be committed to jail, to insure his appearance and to abide the judgment of the court appealed to."

Somewhat different views have been expressed by the District Court of the United States for the Southern District of New York. Charles A. Dana having been charged by information in the Police Court of the District of Columbia with having published a libel, and having been arrested in New York, the warrant to authorize his being brought here was refused and he was discharged, upon the ground that, if brought to this District, he would be tried in a manner forbidden by the Constitution. Mr. Justice Blatchford said *In re Dana*, 7 Benedict, 14: "Even if it were to be conceded that notwithstanding the provision in the Constitution, that 'the trial of *all* crimes, except in cases of impeachment, shall be by jury,' Congress has the right to provide for the trial, in the District of Columbia, by a court without a jury, of such offences as were, by the laws and usages in force at the time of the adoption of the Constitution, triable without a jury, it is a matter of history, that the offence of libel was always triable, and tried, by a jury. It is, therefore, one of the crimes which must, under the Constitution, be tried by a jury. The act of 1870 provides that the information in this case shall not be tried by a jury, but shall be tried by a court. It is true that it gives to the defendant, after judgment, if he deems himself

aggrieved thereby, the right to appeal to another court, where the information must be tried by a jury. But this does not remove the objection. If Congress has the power to deprive the defendant of his right to a trial by jury, for one trial, and to put him, if convicted, to an appeal to another court, to secure a trial by jury, it is difficult to see why it may not also have the power to provide for several trials by a court, without a jury, on several successive convictions, before allowing a trial by a jury. In my judgment, the accused is entitled, not to be first convicted by a court and then to be acquitted by a jury, but to be convicted or acquitted in the first instance by a jury."

Without further reference to the authorities, and conceding, that there is a class of petty or minor offences, not usually embraced in public criminal statutes, and not of the class or grade triable at common law by a jury, and which, if committed in this District, may, under the authority of Congress, be tried by the court and without a jury, we are of opinion that the offence with which the appellant is charged does not belong to that class. A conspiracy such as is charged against him and his codefendants is by no means a petty or trivial offence. "The general rule of the common law," the Supreme Judicial Court of Massachusetts said in *Commonwealth* v. *Hunt*, 4 Met. 111, 121, "is, that it is a criminal and indictable offence, for two or more to confederate and combine together, by concerted means, to do that which is unlawful or criminal, to the injury of the public, or portions or classes of the community, or even to the rights of an individual." In *State* v. *Burnham*, 15 N. H. 396, 401, it was held that "combinations against law or against individuals are always dangerous to the public peace and to public security. To guard against the union of individuals to effect an unlawful design is not easy, and to detect and punish them is often extremely difficult." Hawkins, in discussing the nature of conspiracies as offences against public justice, and referring especially to the statute of 21 Edw. I, relating to confederacies to procure the indictment of an innocent person, says that "notwithstanding the injury intended to the party against whom such

a confederacy is formed may perhaps be inconsiderable, yet the association to pervert the law, in order to procure it, seems to be a crime of a very high nature, and justly to deserve the resentment of the law." 1 Hawk. P. C. c. 72, § 3. So in *Regina* v. *Parnell*, 14 Cox C. C. 508, 514, it was observed that an "agreement to effect an injury or wrong to another by two or more persons is constituted an offence, because the wrong to be effected by a combination assumes a formidable character. When done by one alone it is but a civil injury, but it assumes a formidable or aggravated character when it is to be effected by the powers of the combination." Tomlin says that "the word conspiracy was formerly used almost exclusively for an agreement of two or more persons falsely to indict one, or to procure him to be indicted, of felony," but that "now it is no less commonly used for the unlawful combinations of journeymen to raise their wages, or to refuse working, except on certain stipulated conditions." Toml. Law Dict., Title Conspiracy. See, also, *Commonwealth* v. *Carlisle*, Brightly (Penn.), 40; 3 Whart. Crim. Law, § 1337 *et seq.*, 8th ed.; 2 Archibold's Cr. Pr. & Pl. (Pomeroy's ed.) 1830, note.

These authorities are sufficient to show the nature of the crime of conspiracy at common law. It is an offence of a grave character, affecting the public at large, and we are unable to hold that a person charged with having committed it in this District is not entitled to a jury, when put upon his trial. The jurisdiction of the Police Court, as defined by existing statutes, does not extend to the trial of infamous crimes or offences punishable by imprisonment in the penitentiary. But the argument, made in behalf of the government, implies that if Congress should provide the Police Court with a grand jury, and authorize that court to try, without a petit jury, all persons indicted — even for crimes punishable by confinement in the penitentiary — such legislation would not be an invasion of the constitutional right of trial by jury, provided the accused, after being tried and sentenced in the Police Court, is given an unobstructed right of appeal to, and trial by jury in, another court to which the case may be taken. We cannot assent to that interpretation of the Constitution.

Except in that class or grade of offences called petty offences, which, according to the common law, may be proceeded against summarily in any tribunal legally constituted for that purpose, the guarantee of an impartial jury to the accused in a criminal prosecution, conducted either in the name, or by or under the authority of, the United States, secures to him the right to enjoy that mode of trial from the first moment, and in whatever court, he is put on trial for the offence charged. In such cases a judgment of conviction, not based upon a verdict of guilty by a jury, is void. To accord to the accused a right to be tried by a jury, in an appellate court, after he has been once fully tried otherwise than by a jury, in the court of original jurisdiction, and sentenced to pay a fine or be imprisoned for not paying it, does not satisfy the requirements of the Constitution. When, therefore, the appellant was brought before the Supreme Court of the District, and the fact was disclosed that he had been adjudged guilty of the crime of conspiracy charged in the information in this case, without ever having been tried by a jury, he should have been restored to his liberty.

For the reasons stated,

*The judgment is reversed, and the cause remanded with directions to discharge the appellant from custody.*