# UNITED STATES

*v.*

## JOSÉ LOPEZ ET AL.

San Juan, Criminal, No. 822.

### CONSPIRACY TO VIOLATE DRAFT LAW.

**Conspiracy—Military Service—False Statement.**

    1. The Conspiracy Law, Revised Statutes, § 5440, denounced a severer punishment than the law does for the act which, in this case, the parties conspired to do. The question, however, cannot come up upon a motion to quash.

United States v. Lopez.

Conspiracy—Claims.

 2. Conspiracy, to be punishable, must be confined to crimes already defined, but it may be that the conspiracy of several is a greater offense than the act of one.

Draft Law—Applicable to Porto Rico.

 3. The Draft Law by its terms, is applicable to territories, and this need not be construed as limited to territories incorporated into the Union. The Draft Law, like other statutory laws of the United States not locally inapplicable, has the same force in Porto Rico as in the states. There is nothing locally inapplicable in requiring American citizens, wherever they live, to defend their country in time of war.

Opinion filed April 17, 1918.

---

*Messrs. M. M. Martin,* District Attorney, and *D. F. Kelly,* Assistant District Attorney, for United States.

*Mr. Willis Sweet* for defendants.

HAMILTON, Judge, delivered the following opinion:

The indictment in this case is for a conspiracy to make false statements as to the liability of the defendant José Lopez to serve under the Act of Congress, May 18, 1917, known as the Selective Draft Law, and the regulations of the President of October 16 thereunder. The case comes up upon a motion to quash the indictment, and also upon a demurrer to the indictment on the grounds that, in the first place, the law does not apply to Porto Rico, and, in the second, that if it did the conspiracy provisions set out in § 5440 of the Revised Statutes, Comp. Stat. 1916, § 10,201, Penal Code, § 37, are not applicable to the military draft.

United States v. Lopez.

1. The motion to quash is based upon the ground that the proceeding inaugurated under § 5440, United States Revised Statutes, for conspiracy, is not applicable to the facts set out in the indictment. The gist of the argument from this point is that the military legislation has a provision as to making a false statement as to the liability of anyone for service, in the following words: ". . . and any person who shall make or be a party to the making of any false statement or certificate as to the fitness or liability of himself or any other person for service under the provisions of this act, or regulations made by the President thereunder, or otherwise evades or aids another to evade the requirements of this act, or of said regulations, or who, in any manner, shall fail or neglect fully to perform any duty required of him in the execution of this act, shall, if not subject to military law, be guilty of a misdemeanor." [40 Stat. at L. 76, chap. 15, § 6, Comp. Stat. —, § 2044f.]

It has been held that a conspiracy to commit an act is not a bar to the prosecution for the commitment of the act itself. Berkowitz v. United States, 35 C. C. A. 379, 93 Fed. 452. Section 5440 of the Revised Statutes of the United States is as follows: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not less than one thousand dollars and not more than ten thousand dollars, and to imprisonment not more than two years."

The punishment under this section is much more severe than under the Military Act, being a fine not exceeding $10,000 and imprisonment not exceeding two years, and the argument is

made that, therefore, the statute imposing the smaller punishment is to be adopted. Sutherland, Stat. Constr. 347, 349, 350.

It may be that it is an amendment to the extent of limiting the severity of the old act so far as it relates to the military offenses in question; but that is a point which does not come up at this stage of the case. That can only be presented after conviction of the defendants, and when the question of punishment is under consideration. It would seem that it need not be determined at this time.

2. The scope of § 5440 of the Revised Statutes is broad. The object and the effect are to make punishable the conspiracy of two or more people to commit an act, as an offense entirely distinct from doing the act itself. The one offense does not include the other. It may well be that, as far as the public is concerned, the greater offense of the two would be the conspiracy of several people rather than the doing of the act by one person. And it is perfectly competent for Congress to punish the conspiracy more severely than what might be called, for other purposes, the principal offense itself. Clune v. United States, 159 U. S. 590, 40 L. ed. 269, 16 Sup. Ct. Rep. 125; Callan v. Wilson, 127 U. S. 540, 555, 33 L. ed. 223, 228, 8 Sup. Ct. Rep. 1301. It is quite true that there can be no punishment for a conspiracy to commit an act which is not in itself a crime, punishable by fine and imprisonment. Thus, it has been held that where a penalty is imposed for making a settlement on Indian lands under Rev. Stat. § 2118, Comp. Stat. 1916, § 4108, but no imprisonment is affixed, this is not a crime, and a conspiracy to commit the act cannot itself, therefore, be considered a crime under § 5440, Comp. Stat. 1916, § 10,201. In other words, the Conspiracy Statute is limited to crimes, and

United States v. Lopez.

does not make a crime out of something not otherwise such. In the case at bar, however, it is a misdemeanor under § 6 of the Selective Draft Act to make a false statement or certificate as to fitness of any person for service, punishable by imprisonment for not more than one year. It might well be that persons conspired together to do this, and the doing of it was prevented by discovery of the conspiracy. In such case it could not seriously be contended that wrong had not been committed against the United States, and that wrong is the one denounced by § 5440 of the Revised Statutes.

3. It is argued that the Draft Law does not apply to Porto Rico because, by its terms, the draft "shall be based upon liability to military service of all male citizens . . . between the ages of twenty-one and thirty years, both inclusive." Porto Rico having been held in the Tapia Case not to be incorporated into the Union, it is argued that it is a mere possession whose political status is yet to be determined, and that, therefore, the provisions of the Draft Act, referring exclusively to "several states, territories and the District of Columbia," do not apply to Porto Rico. In Downes v. Bidwell, 182 U. S. 244, 45 L. ed. 1088, 21 Sup. Ct. Rep. 770. Mr. Justice Gray stated that a reference to the territories such as the Philippines and Porto Rico did not mean territories of the United States, such as those on the continent, Alaska, or Hawaii. We must, however, bear in mind the object of the law. As Chief Justice Marshall said in McCullough v. Maryland, 4 Wheat. 407, 4 L. ed. 601, we must remember that it is a Constitution which we are expounding, and in the case at bar it is a question of a country engaged in a vital war. This is not a case of construction of an ordinary statute affecting rights between individuals, but of a

United States v. Lopez.

statute whose general scope is to put all the man power of the United States at the disposal of the government for waging the most teriffic war of history. No intendments are to be indulged against the validity and scope of the statute, but on the contrary these are to be construed to effect the obvious intent. The law expressly applies to "all male citizens or male persons not alien enemies who have declared their intention to become citizens." And the Jones Act of March 2, 1917, makes Porto Ricans not disclaiming, citizens of the United States. The Draft Law applies to American citizens, whether in states, territories, or the District of Columbia; and whether the territory is to be held to be politically incorporated into the United States, or politically unincorporated into the United States, is a question which is not within the purview of the Draft Law. What may be the proper definition of territory for revenue purposes is one thing; what is the definition of territory for purposes of defending the whole American system, now put in jeopardy in this war against autocracy, is another thing. Whether the law has been construed by the War Department as applicable to the Philippines or to St. Thomas is beside the mark. How the Phillippines and St. Thomas should be regarded is a question which may well be left to decision when the case comes up in the proper tribunal.

The Jones Act did not carve out Porto Rico as an independent state or province, not affected by any legislation except that act itself. In the first place, a subsequent act would, if necessary, be construed to repeal any such provision if it existed, and in point of fact it does not exist. Section 9 of the Jones Act provides that, with certain revenue exceptions, "the statutory laws of the United States not locally inapplicable . . . shall

have the same force and effect in Porto Rico as in the United States." There is nothing locally inapplicable in requiring citizens of the United States, wherever they may live, to defend their country in the time of war. On the contrary nothing can be conceived as more applicable than such a provision. It need only be said now that Porto Rico is a territory inhabited by American citizens only, which the Philippines are not, and that the Draft Law properly applies to all Americans on this island.

It follows, therefore, that the motion to quash must be denied and the demurrer overruled.

It is so ordered.