**CLAWANS v. DISTRICT OF COLUMBIA.**
No. 6601.

United States Court of Appeals for the District of Columbia.

Argued April 6, 1936.

Decided May 11, 1936.

Seth W. Richardson, of Washington, D. C., for appellant.

E. Barrett Prettyman, Corp. Counsel, Edward M. Curran, and Raymond Sparks, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, Associate Justice.

Appellant was convicted in the police court of the District of Columbia of a violation of an Act of Congress of July 1, 1902, as amended by an act approved July 1, 1932 (47 Stat. 550, c. 366, § 7, pars. 39, 47, and 48 (D.C.Code Supp. I, 1933, T. 20, §§ 1739, 1755, 1756), and sentenced to pay a fine of $300 or to confinement in jail for sixty days. Appellant, when arraigned, claimed the right to a jury trial in accordance with the provisions of article 3, § 2, cl. 3, of the Con-

stitution, providing that, "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury." The right was denied, and the District of Columbia now insists that no constitutional privilege of appellant was invaded because of title 18, § 165, of the 1929 District of Columbia Code (16 Stat. 153, c. 133; 26 Stat. 848, c. 536; 31 Stat. 1196, c. 854; 43 Stat. 1120, c. 443, § 4), providing summary trial by a magistrate.

This last-mentioned act was passed for the government of the District of Columbia and provides that prosecutions in the police court shall be on information; that where the accused would be entitled to a jury trial under the Constitution, trial shall be by a jury unless waived; and that in cases where the accused would not by force of the Constitution be entitled to trial by jury, trial shall be by the court without a jury, unless, in cases where the fine or penalty may be *more* than $300 or imprisonment *more* than ninety days, the accused shall demand a trial by jury, in which case the trial shall be by jury.

The offense charged in the information was that appellant was engaged · in the business of dealer in the return portions of railroad excursion tickets, contrary to the provisions of the act of Congress approved July 1, 1932, supra.

Paragraph 39 of that act (D.C.Supp. I, 1933, T. 20, § 1739) declares that dealers in secondhand personal property, including the return or other unused portion of any ticket, order, or token purporting to evidence the right of the holder or possessor thereof to be transported by any railroad or other common carrier, from one state or territory of the United States or the District of Columbia, to any other state or territory of the United States or to the District of Columbia, shall pay a license tax of $50 per annum.

Paragraph 48 (section 1756), that any person violating the provisions of the act "shall upon conviction be fined not more than $300 or imprisoned for not more than ninety days."

The answer to the question we have to decide depends, as we shall point out, upon whether the nature of the offense and the punishment prescribed bring it within the class of offenses described as "petty" in Schick v. United States, 195 U.S. 65, 24 S.Ct. 826, 49 L.Ed. 99, 1 Ann. Cas. 585.

In the Schick Case, a prosecution by criminal information for violation of a section of the oleomargarine law punishable by a fine of $50, the Supreme Court said that, "So small a penalty for violating a revenue statute indicates only a petty offense," and held that in such circumstances there is no constitutional requirement of a jury.

On the other hand, in Callan v. Wilson, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223, a prosecution for common law conspiracy, the defendant was charged with having, through an association of musicians, boycotted one of the members of the association and deprived him of his right to pursue his calling and trade. The defendant, in a summary proceeding and without a jury, was fined $25, and on petition for habeas corpus the Supreme Court held that the denial of a jury trial was a violation of his constitutional rights, because the offense charged was an indictable offense at common law.

And in District of Columbia v. Colts, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177, a defendant charged with reckless driving in the streets of the city of Washington and sentenced to 30 days in jail, was held entitled to a jury trial, also on the ground that the offense was indictable at common law.

In the two last-mentioned cases the Supreme Court said that the provisions of the Constitution with relation to jury trial are to be read and interpreted in the light of the common law, and, as we have seen, held in each case that, since the offense charged was triable at common law only by jury, the constitutional provisions were violated by trial without one.

Obviously if the sole criterion is whether the offense was triable only by jury at common law, the conviction here would have to stand, for the offense charged here was, perhaps, unknown to the common law. Also, if the test is whether the punishment which may be imposed is of a kind and nature which could be imposed in summary proceedings at the time of the adoption of the Constitution, the conviction would likewise have to stand; for the most casual examination of the history of the English criminal law from the time of James I to the time of our Revolution—and, as well, the history of criminal procedure in most of the American Colonies—shows unmistakably that summary proceedings, involving even se-

verer punishments than the maximum provided under the statute in question, were not then uncommon. For example, many offenses not only punishable by fines, but those also in which corporal punishment or imprisonment might be imposed, were both in England and in the Colonies tried solely by magistrates. Violations of laws relating to liquor, trade and manufacture, smuggling, traffic on the highways, the Sabbath, cheats, gambling, swearing, small thefts, assaults, offenses to property, servants, and seamen, vagabondage, and disorderly conduct, were all in England by acts of Parliament offenses triable without a jury. In New York in 1732 statutes were passed making triable before magistrates any misdemeanor, breach of the peace, or other criminal offense under the degree of grand larceny. Nearly the same provisions may be found in the laws of New Jersey and Maryland and Virginia. Citations to the statutes and instances of their application are collected at great length in an article in the Harvard Law Review of June, 1926 (vol. XXXIX); and other like instances are cited in State v. Glenn, 54 Md. 572, where the Court of Appeals of Maryland, in passing upon the right to trial by jury of a person charged with being an habitually dissolute person and sentenced to serve six months in a house of correction, said: "In England, notwithstanding the provision in the Magna Charta of King John, Art. 46, and in that of 9 Hen. 3, ch. 29, which declares that no freeman shall be taken, imprisoned or condemned, 'but by lawful judgment of his peers, or by the law of the land,' it has been the constant course of legislation in that kingdom, for centuries past, to confer summary jurisdiction upon justices of the peace for the trial and conviction of parties for minor and statutory police offences; and this jurisdiction has been largely increased and extended in modern times, as will be seen by reference to Burn's Justice, tit. Conviction; Bacon's Abr., tit. Justice of the Peace, and Paley on Summary Convictions, 5 Ed. Work-houses and Houses of Correction, principally occupied by parties convicted by justices of the peace, have been maintained, certainly from the days of Queen Elizabeth to the present, as parts of the police system of that country; and both the jurisdiction and the means of punishment are deemed essential to the good government and well being of society there, and it is not less so here."

The court then reviews some of the earlier colonial statutes and says (54 Md. 572, at page 603): "These statutes have been in force here from our earliest history, and are still in force; and we are not aware that it has ever been supposed that their provisions were in any way restrained or controlled by the declaratory provisions in the Declaration of Rights. There are a great many statutes upon the statute book, relating to a great variety of subjects, prescribing fines, penalties and forfeitures, *as punishment,* for doing or omitting to do certain things; and by many of those statutes jurisdiction has been given to justices of the peace, from whose judgments no appeal was provided for until within a comparatively recent period."

But we think that the decision of the question involves more than is embraced in either indictability at common law or the power of magistrates to impose jail sentences pursuant to colonial statutes; for, as was said by the Supreme Court in Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793, 19 Ann.Cas. 705, it must not be overlooked that time works changes and brings into existence new conditions and purposes, and therefore a principle, to be vital, must be capable of wider application than the mischief which gave it birth. This principle is, as we think, clearly recognized in the opinion of the Supreme Court in the Schick Case. That case, like this, embraced an offense unknown to either people of England or the United States at the time of the adoption of the Constitution; and the holding that the offense was petty was placed on the ground that the penalty for its commission made it so. And so, logically and consistently, the Supreme Court said, as to other provisions of the same statute imposing severer penalties, that the violation of one of these was a "crime" triable only to a jury. This distinction is an acknowledgment of the fact that the practice at the time of the adoption of the Constitution is not the only factor to be considered. This, indeed, the Supreme Court has said in so many words, viz.: "The truth is, the nature of the offense, and the amount of punishment prescribed, rather than its place in the statutes, determine whether it is to be classed among serious or petty offenses,

—whether among crimes. or misdemeanors." Schick Case, 195 U.S. 65, at page 68, 24 S.Ct. 826, 827, 49 L.Ed. 99, 1 Ann. Cas. 585.

The Colts Case was decided a quarter of a century after the Schick Case and, as we pointed out, turned exclusively on the nature of the offense. The statute provided only a maximum sentence of 30 days in jail, but this was held of no consequence since the offense itself was triable only by jury at common law. A fair inference, therefore, from the decisions in these two cases (Schick and Colts), is that the rule which the Supreme Court means to enforce is: First, that in all cases in which the offense charged is of a nature which at common law, as understood and practiced by our ancestors at the time of the adoption of the Constitution, was indictable and triable by a jury, the trial now must be by jury unless waived; second, that in the case of offenses unknown to the common law or which then were regarded as petty, but which now Congress has declared shall be punished severely, the degree of punishment, rather than the nature of the offense, determines whether or not it is a crime within the constitutional limitations.

The offense with which we are here concerned is the breach of a municipal ordinance. It is an offense which, if known to the common law, was certainly regarded as petty—an offense to which there is not attached any of the elements of moral turpitude. There is, therefore, nothing in the "nature of the offense" by which it may be characterized as a crime. It is of that class of cases described by Mr. Dillon in his work on Municipal Corporations (vol. 1, § 433), as falling within the description of municipal police regulations and which relate to acts and omissions not embraced in the general criminal legislation of the state. Such acts and omissions were regarded as innocent, or at least .as trivial, one hundred and fifty years ago. Obviously, therefore, the doing of business without the payment of a license tax was not a crime within the contemplation of the makers of the Constitution or the people of the Colonies at the time of the adoption of the Constitution. And this brings us, then, *to* consider only the further question whether the extent of the punishment is so severe as to take the offense out of the category of "petty" and make it a "crime." As we have seen already, the statute permits a fine up to $300 or imprisonment up to ninety days in jail. The latter, that is to say, the right to impose a sentence of three months in jail by a magistrate without a jury, is the question on which the answer must turn. If, instead of three months in jail, the punishment provided were six months or a year, the problem would be simpler. So, also, if the punishment were, let us say, ten days in jail. The difficulty is in applying the measuring rod to intermediate periods. As was suggested by the authors of the article in the Harvard Law Review to which we have made reference, the query is: When is far too far? All of which proves the unwisdom of attempting to deduce "from abstract principles any limiting definition of fundamental and constitutional rights." If Congress can deny or limit the right of jury trial in the District of Columbia, it can also deny and limit it wherever the jurisdiction of the United States extends, for the constitutional limitations apply in the District with the same force that they apply in the states. Callan v. Wilson, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223; Downes v. Bidwell, 182 U.S. 244, 21 S.Ct. 770, 45 L.Ed. 1088. And it is common knowledge that Congress never has attempted to confer jurisdiction on United States Commissioners or on the District Courts to try without a jury cases of the nature involved here. And in considering the question as applied solely to the District of Columbia, it is not amiss to refer to the fact that under the present statute there is not only a denial of jury trial but there is also no appeal of right to any superior court. The decision of the magistrate is final, unless upon application to this court we elect to exercise the power of review; and if we do, we are by rule confined to questions of law and may not weigh the evidence. In most of the states the mechanics of the law provide either a right of election on the part of the accused to be held over for trial in a court with a jury or an appeal of right to a higher court to review the judgment of the magistrate. The omission of either provision cannot and should not be lightly overlooked.

Viewed in this aspect, the penalty which may be imposed under the statute cannot be said to be petty or trivial. Laying aside

the question of the right to impose a fine of $300, the right to imprison for three months involves a proposition of real seriousness. To inflict upon the accused, summarily, imprisonment in a common jail for that length of time, and at the same time to deny him of right an appeal to a court of record, is a matter which cannot be whistled down the wind with the statement that court business must go on, that dockets must be cleared, or that the requirements of jury service should not be expanded to the loss of the citizen in his private affairs. Nor is it any more an answer to say, as is not now uncommon, that the limitations and guaranties of the Constitution are now outworn or are unsuitable to the problems of government in the growth of population and the passing of time. That the guaranty of jury trial is, if it is, among the least of these, is not a reason for its abolition; nor does that fact justify whittling it down in civil and much less in criminal cases. It is still one of those immutable principles of justice which inhere in our conception of a free government; and it was doubtless this principle which induced the Supreme Court within the last year to say: "Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right * * * should be scrutinized with the utmost care." Dimick v. Schiedt, 293 U.S. 474, at page 486, 55 S.Ct. 296, 301, 79 L.Ed. 603, 95 A.L.R. 1150.

For these reasons, we are of opinion that the constitutional provisions with relation to jury trial apply, first, in all cases—especially in all cases where as here there is no election of right and no appeal of right—in which the offense charged was an indictable offense under the common law, without regard to the measure of punishment; and, second, in all cases, without regard to the nature of the offense, where the punishment which may be inflicted under the statute involves a sentence as severe as confinement in jail for ninety days.

We have noted the other assignments and find them without substance. But, for denial of the right of jury trial, we are obliged to reverse and remand for a new trial.

Reversed.