UNITED STATES of America, Plaintiff-Appellee,

v.

Wilbert Leon JENKINS, Defendant-Appellant.

No. 82–1352.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 1982.

Decided June 28, 1983.

John J. Cleary, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

John Houston, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before FLETCHER, NELSON and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

## I

Wilbert Leon Jenkins, a civilian, and his friend, a Marine, requested permission to enter the Camp Pendleton military base. They were directed to a gatehouse on the base where they could obtain a pass. At the gatehouse, officials detained Jenkins in order to check his apparently altered automobile registration card. Jenkins's friend and an official began to argue about the necessity of the detention; the argument turned into a scuffle. Meanwhile, a military policeman approached Jenkins and held him by the right arm in order to restrain him. Jenkins attempted to strike the military policeman with his left elbow. Although the policeman grabbed Jenkins's elbow and cushioned the blow, the momentum of the attempt caused both to lose balance and fall backwards through a large plate glass window.

Jenkins was charged with assault by striking, beating, or wounding, in violation of 18 U.S.C. § 113(d) (1976). Jenkins gave his written consent to be tried by a magistrate on the assault charge and requested a jury trial, which was granted. The Government then filed a superseding information charging Jenkins with simple assault in violation of 18 U.S.C. § 113(e) (1976). A simple assault charge carries a maximum punishment of three months in prison, a $300 fine, or both. Jenkins's request for a jury trial on the superseding charge was denied. After a court trial, the magistrate convicted Jenkins of simple assault, gave him a ninety-day suspended sentence, and placed him on probation for two years.

Jenkins appealed to the district court. The district court judge entered an order affirming the conviction and sentence of the magistrate. Jenkins then filed this timely appeal. We note jurisdiction under 28 U.S.C. § 1291 (1976), and affirm.

## II

Jenkins first challenges the constitutionality of 28 U.S.C. § 636(a)(3) (1976), a provision of the Federal Magistrates Act that authorizes magistrates to conduct trials of misdemeanors with the consent of the defendant. Jenkins contends that a federal criminal case must be tried before an Article III judge.

The Government responds: (1) that as applied in this case the Magistrates Act is constitutional even though magistrates are not Article III judges.[1] Jenkins was convicted of assault within a federal enclave, and thus, the Government argues, no Article III judge was required; (2) even if an Article III judge were required, the Government continues, the statute is constitutional. Because the statute requires that defendants consent to trial before the magistrate, the defendants waive any rights they may have to trial before an Article III judge and thus the consent cures any jurisdictional infirmities engendered by trial before an Article I tribunal; and (3) that the magistrate merely functions as an adjunct to the district court; "jurisdiction" still lies in the district court,

---

1. It is well established that the magistrates are not Article III judges. *United States v. Saunders,* 641 F.2d 659, 663 (9th Cir.1980), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); *Muhich v. Allen,* 603 F.2d 1247, 1251 (7th Cir.1979). They enjoy neither of the protections afforded by Article III: lifetime tenure subject to "good behavior," and undiminishable salaries. Full-time magistrates serve eight-year terms, 28 U.S.C. § 631(e) (Supp. V 1981), and may be removed for "incompetency, misconduct, neglect of duty, or physical or mental disability," *id.* § 631(i). Furthermore, the magistrate's office may be terminated if the judges in the district determine that those services are no longer needed. *Id.* The magistrates' salary protections are statutory and their salaries may be diminished by Congress. 28 U.S.C. § 634(b) (1976).

and the magistrate simply aids the district court in its factfinding function. Because we agree with the Government's first argument, that the Magistrates Act is constitutional as applied in this case, we do not reach the Government's other contentions.

### A

▮ We begin with the established rules that a court should never anticipate constitutional law questions and never formulate a rule of constitutional law broader than that necessary to resolve the case before it. *See United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). We subscribe to the sensible proposition that in the complex area of Article III jurisdiction these rules have special force. *See Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 2881, 73 L.Ed.2d 598 (1982) (Rehnquist, J., concurring). Thus, although Jenkins mounts a general attack on the constitutional validity of 28 U.S.C. § 636(a)(3) (1976), we examine the facts before us to determine whether we need resolve this broad question.

### B

▮ Jenkins was convicted of committing simple assault "within the special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 113(e) (1976). Camp Pendleton, where the assault occurred, is a federal enclave that falls within this special territorial jurisdiction. *See* 18 U.S.C. § 7(3) (1976). The United States exercises exclusive criminal jurisdiction over Camp Pendleton.[2] Thus, in this case, we face only the narrow question whether a party charged with committing a federal crime on a federal enclave must be tried before an Article III judge.

### C

▮ The Constitution grants Congress the authority over federal enclaves, by providing that Congress has the power

> to exercise exclusive Legislation in all Cases whatsoever, over [the District of Columbia], and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for Erection of Forts ... and other needful Buildings.

U.S. Const. art. I, § 8, cl. 17. The Congressional power under clause 17 is plenary. *See Palmore v. United States,* 411 U.S. 389, 397, 93 S.Ct. 1670, 1676, 36 L.Ed.2d 342 (1973). When Congress legislates with respect to the District of Columbia and federal enclaves it acts as a state government with all the powers of a state government. *See id.; Paul v. United States,* 371 U.S. 245, 263, 83 S.Ct. 426, 437, 9 L.Ed.2d 292 (1963).

In *Palmore,* 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), the Supreme Court considered "whether a defendant charged with a felony under the District of Columbia Code may be tried by a judge who does not have protection with respect to tenure and salary under Art. III of the Constitution." *Id.* at 390, 93 S.Ct. at 1672. The Court held that under clause 17 Congress could provide that such a defendant be tried before a non-Article III judge. *Id.* at 390–91, 93 S.Ct. at 1672–73.

▮ Because clause 17 does not distinguish between the District of Columbia and other federal enclaves, we find *Palmore*

---

**2.** Under Article 1, section 8, clause 17, the United States obtains exclusive jurisdiction over land only with the consent of the state. *See Paul v. United States,* 371 U.S. 245, 264, 83 S.Ct. 426, 437, 9 L.Ed.2d 292 (1963). This can be accomplished through a consensual acquisition or by a condemnation followed by a cession of jurisdiction. *See id.* at 264–65, 83 S.Ct. at 437–38. After the state consents the United States must formally accept jurisdiction. 40 U.S.C. § 255 (1976); *see Paul,* 371 U.S. at 264, 83 S.Ct. at 437.

In 1942 the United States condemned land in San Diego County, California, for the Camp Pendleton Marine Corps Training Base. *See United States v. Fallbrook Public Utility District,* 110 F.Supp. 767, 771 (S.D.Cal.1953). California ceded exclusive jurisdiction to the United States and the Secretary of the Navy accepted the cession. *See id.; see also People of the State of California v. United States,* 235 F.2d 647, 655 (9th Cir.1956).

indistinguishable from the instant case and controlling. *See Paul v. United States,* 371 U.S. at 263, 83 S.Ct. at 437 ("The power of Congress over federal enclaves that come within the scope of Art. I, § 8, cl. 17, is obviously the same as the power of Congress over the District of Columbia"). In addition, the reasoning of *Palmore* is fully applicable here. Under clause 17 Congress acts as a state government with total legislative, executive and judicial power. *Palmore,* 411 U.S. at 397, 93 S.Ct. at 1676; *see Marathon Pipe Line Co.,* 102 S.Ct. at 2873–74 (discussing the rationale of *Palmore*). The Constitution does not require that all federal criminal law be enforced before Article III courts. *Palmore,* 411 U.S. at 400, 93 S.Ct. at 1677; *see Swain v. Pressley,* 430 U.S. 372, 382–83, 97 S.Ct. 1224, 1230–31, 51 L.Ed.2d 411 (1977). Thus, the requirements of Article III are consistent with the establishment by Congress of non-Article III courts to enforce federal criminal laws in special geographic areas where, pursuant to clause 17, it functions as a state government. *Palmore,* 411 U.S. at 407–08, 93 S.Ct. at 1681–82; *see Marathon Pipe Line Co.,* 102 S.Ct. at 2874 (emphasizing Congress's unique power under Art. I, § 8, cl. 17, to legislate in certain geographic areas).

■ Under the rationale and holding of *Palmore,* we conclude that the Constitution does not require that a defendant charged with violation of a criminal statute enacted pursuant to Congress's power under clause 17 be tried before an Article III judge. Thus, Jenkins's Article III objection to his trial by magistrate fails.

**3.** An exception is made in contempt cases, where Congress has not specified the penalty. Then, the court examines the fine or term of imprisonment actually imposed. *See Muniz v. Hoffman,* 422 U.S. 454, 476–77, 95 S.Ct. 2178, 2190–91, 45 L.Ed.2d 319 (1975); *Codispoti v. Pennsylvania,* 418 U.S. 506, 511, 94 S.Ct. 2687, 2690, 41 L.Ed.2d 912 (1974).

The other exceptions to the use of the penalty as a criterion of the gravity of the offense are where collateral consequences attach to the conviction, *United States v. Craner,* 652 F.2d 23,

## III

■ Jenkins's second argument is that the punishment actually imposed on him, particularly the two years probation, is so severe that it converts his offense into a "serious" one entitling him to a jury trial. The constitutional right to a jury trial attaches only to "serious" offenses, and not "petty" offenses. *Frank v. United States,* 395 U.S. 147, 148–49, 89 S.Ct. 1503, 1504–05, 23 L.Ed.2d 162 (1969); *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *District of Columbia v. Clawans,* 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937); *Callan v. Wilson,* 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888). The Court has generally used the severity of the penalty authorized by the legislature, and not the penalty actually imposed, as the appropriate objective indication of the societal judgment of the seriousness of an offense. *Baldwin v. New York,* 399 U.S. 66, 68, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970) (plurality opinion); *Frank,* 395 U.S. at 148, 89 S.Ct. at 1504; *Duncan v. Louisiana,* 391 U.S. 145, 161–62, 88 S.Ct. 1444, 1453–54, 20 L.Ed.2d 491 (1968)[3]. Ordinarily, the Court considers the offense "petty" if the maximum penalty provided by Congress does not exceed six months imprisonment, a $500 fine, or both. *Duncan,* 391 U.S. at 161, 88 S.Ct. at 1453. In this case, the maximum penalty for simple assault is three months in prison, or a $300 fine, or both.

■ The seriousness of the offense is not changed by the imposition of a two-year probation term. The Court held in *Frank* that the three-year probationary period imposed by the district court did not entitle the defendant to a jury trial. 395

25–26 (9th Cir.1981) (conviction for driving under the influence of alcohol is a serious offense because, in addition to a six-month prison term and a $500 fine, a defendant may lose the right to a driver's license), or for some other reason the offense is considered malum in se, *see United States v. Arbo,* 691 F.2d 862, 864 (9th Cir. 1982). Jenkins, however, does not argue that there are any collateral consequences to his conviction, or that his offense should be deemed serious because it is malum in se.

U.S. at 150, 89 S.Ct. at 1506. *Frank* is controlling; Jenkins's offense has not been converted into a serious one because he received two-year probation.

## IV

Jenkins also contends that the magistrate lacked the statutory authority to impose probation for greater than six months following his conviction for a petty offense. This argument is meritless. The statute clearly sets forth the general powers of the magistrate to grant probation. 18 U.S.C. § 3401(d) (1976). An exception to this general power prevents a magistrate from imposing a term of probation longer than six months on a youth offender for a petty offense. 18 U.S.C. § 3401(g)(3) (Supp. III 1979). Jenkins is not a youth offender, and this exception does not affect the general grant of authority contained in 18 U.S.C. § 3401.

▆▆▆▆ Jenkins argues that, if the magistrate may impose a longer probation term on an adult offender than on a youth offender convicted of the same offense, his constitutional equal protection rights have been infringed. No fundamental interests have been implicated, nor is Jenkins a member of a suspect class. Therefore, the issue is whether the congressional classification rationally furthers a purpose identified by the legislature. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1975). Great deference is paid to the legislative classification under this test. *Id.* at 314, 96 S.Ct. at 2567.

▆▆▆ In limiting the magistrate's authority to sentence a youth offender, Congress was concerned about the possibility of youth offenders serving long sentences under the Youth Corrections Act for misdemeanors and petty offenses. H.R.Conf. Rep. No. 444, 96th Cong., 1st Sess. 9–10, *reprinted in* 1979 U.S.Code Cong. & Ad. News 1487, 1490. Congress emphasized the rehabilitative purposes of the Youth Corrections Act, and the desire to implement that purpose. *Id.* When challenged on equal protection grounds, statutory distinctions requiring different sentencing treatment based on the age of the offender have been upheld as long as the sentence serves the purpose for which it was designed. *See, e.g., United States v. Ballesteros*, 691 F.2d 869, 870 (9th Cir.1982); *United States ex rel. Murray v. Owens*, 465 F.2d 289, 293 (2d Cir.1972), *cert. denied*, 409 U.S. 1117, 93 S.Ct. 930, 34 L.Ed.2d 701 (1973); *Cunningham v. United States*, 256 F.2d 467 (5th Cir.1958). Jenkins does not argue that the Youth Corrections Act does not meet the rehabilitative purposes for young offenders. Jenkins's right to equal protection under the laws has not been violated by the different treatment accorded youth offenders under the magistrate's sentencing powers.

The judgment is AFFIRMED.