847 F.2d 609
 UNITED STATES of America, Plaintiff-Appellee,
v.
John Warren STANSELL; Patricia A. Donohue; Peter C.
Donohue; Michael P. Hardt; Greg K. Vinson,
Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth James GARRISON, Defendant-Appellant.
 Nos. 87-3101, 87-3102.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 5, 1988.
Decided May 27, 1988.
 
 John Mellen, Woodley & Thurston, Kirkland, Wash., for defendants-appellants.
 Kenneth G. Bell, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before BEEZER, HALL and WIGGINS, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Defendants John Stansell and others (collectively, defendants) appeal their convictions based on violations of 40 U.S.C. Secs. 318a, 318c and 41 C.F.R. Sec. 101-20.304 (1986). We affirm.
 
 FACTS
 
 2
 On August 15, 1986, defendants participated in a protest demonstration at the Jackson Federal Building in Seattle. As part of the demonstration, some of the demonstrators attempted to chain shut the doors at the Second Avenue entrance. After Federal Protective Service (FPS) officials cut and removed the chains, the demonstrators sat in front of the doorway, preventing federal employees from entering.
 
 
 3
 FPS officials announced that the protesters had to move clear of the doorways, and that if they failed to move, they would be arrested. Defendants refused to move. After FPS officials advised defendants individually to move and were again refused, the officials arrested defendants. The remaining protesters moved away from the doors and continued the demonstration.
 
 
 4
 Defendants were charged with violating 40 U.S.C. Secs. 318a, 318c, and 41 C.F.R. Sec. 101-20.304 (1986). Before trial, the Magistrate denied defendants' motions for a jury trial and to dismiss on grounds of overbreadth and vagueness. At a bench trial, the Magistrate convicted six of the seven defendants, acquitting defendant Siptroth, sentencing defendants Stansell and Donahue to serve ten-day jail terms, and sentencing the remaining defendants to pay fines of fifty dollars each.
 
 
 5
 The district court affirmed the convictions, reasoning that (1) the motion for jury trial was properly denied and (2) 41 C.F.R. Sec. 101-20.304 (1986) was not unconstitutionally vague or overbroad. Defendants timely appeal.
 
 ANALYSIS
 A. Motion for Jury Trial
 
 6
 The denial of defendants' motion for jury trial is a question of law reviewed de novo. Rife v. Godbehere, 814 F.2d 563, 564, amended, 825 F.2d 185 (9th Cir.1987). Defendants contend that they were unconstitutionally denied their right to jury trial. Moreover, they maintain that when a criminal prosecution raises substantial first amendment issues, a jury trial must be allowed even for petty offenses.
 
 
 7
 The sixth amendment right to jury trial does not extend to all criminal cases. District of Columbia v. Clawans, 300 U.S. 617, 624, 57 S.Ct. 660, 661-62, 81 L.Ed.2d 843 (1937); Rife, 814 F.2d at 564. This constitutional right to a jury attaches only to "serious" offenses, and not to "petty" offenses. Frank v. United States, 395 U.S. 147, 148-49, 89 S.Ct. 1503, 1504-05, 23 L.Ed.2d 162 (1969); Rife, 814 F.2d at 564; United States v. Jenkins, 734 F.2d 1322, 1326 (9th Cir.1983), cert. denied, 469 U.S. 1217, 105 S.Ct. 1198, 84 L.Ed.2d 342 (1985). The question before us is thus whether violation of section 101-20.304 is a serious or petty offense.
 
 
 8
 The Supreme Court has generally used the severity of the maximum authorized penalty as the most relevant criteria in determining whether an offense is petty or serious. See Baldwin v. New York, 399 U.S. 66, 68, 90 S.Ct. 1886, 1887-88, 26 L.Ed.2d 437 (1970) (plurality opinion); Frank, 395 U.S. at 148, 89 S.Ct. at 1504-05; Duncan v. Louisiana, 391 U.S. 145, 159, 88 S.Ct. 1444, 1452-53, 20 L.Ed.2d 491 (1968). The Baldwin plurality concluded that "no offense can be declared 'petty' for purposes of the right to trial by jury when imprisonment for more than six months is authorized." 399 U.S. at 69, 90 S.Ct. at 1888. The general rule has become that an offense is petty if the maximum penalty provided does not exceed six months imprisonment, a $500 fine, or both. See Jenkins, 734 F.2d at 1326; see also 18 U.S.C. Sec. 1(3) (defining a petty offense).[1]
 
 
 9
 The maximum authorized penalty at the time of the defendants' conviction for a violation of 41 C.F.R. subpart 101-20.3 was "a fine of not more than $50 or imprisonment of not more than 30 days, or both." 41 C.F.R. Sec. 101-20.315 (1986); see also 40 U.S.C. Sec. 318c.[2] Because the maximum punishment faced by the defendants here falls far below the standards for a serious offense, the offense is properly deemed petty. Accordingly, defendants are not entitled to a jury trial.[3]
 
 B. Overbreadth and Vagueness
 
 10
 We review de novo defendants' constitutional challenge that 41 C.F.R. Sec. 101-20.304 (1986) is both overbroad and vague on its face. United States v. Westbrook, 817 F.2d 529, 531 (9th Cir.1987); United States v. Gilbert, 813 F.2d 1523, 1526 (9th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987). The regulation at issue provides:
 
 
 11
 Sec. 101-20.304--Conformity with signs and directions. Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the direction of Federal protective officers and other authorized individuals.
 
 41 C.F.R. Sec. 101-20.304 (1986).[4]
 1. Overbreadth
 
 12
 Defendants contend that section 101-20.304 is unconstitutionally overbroad on its face because there are no easily identifiable acts of any kind that it prohibits. They also maintain that there are no reasonable limiting constructions that would make the regulation constitutional.
 
 
 13
 Under the overbreadth doctrine in first amendment cases, a litigant is "permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1972). Attacks are allowed on regulations that "delegate[ ] standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment rights." Id. at 613, 93 S.Ct. at 2916. The Supreme Court warned, however, that "[a]pplication of the overbreadth doctrine in this manner is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort. Facial overbreadth has not been invoked where a limiting construction has been or could be placed on a challenged statute." Id. (emphasis added). Moreover, if a statute covers both conduct and speech, as the regulation does here, the Supreme Court requires that "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Id. at 615, 93 S.Ct. at 2918 (emphasis added).
 
 
 14
 The Supreme Court has defined "substantial overbreadth" as the
 
 
 15
 criterion the Court has invoked to avoid striking down a statute on its face simply because of the possibility that it might be applied in an unconstitutional manner. It is appropriate in cases where, despite some possibly impermissible application, the " 'remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct....' " In such a case, the Court has required a litigant to demonstrate that the statute "as applied" to him is unconstitutional.
 
 
 16
 Secretary of State of Md. v. J.H. Munson Co., 467 U.S. 947, 964-65, 104 S.Ct. 2839, 2851, 81 L.Ed.2d 786 (1984) (citations omitted) (emphasis added). However, if there is "no core of easily identifiable and constitutionally proscribable conduct" then the statute is unconstitutionally overbroad. Id. at 965, 104 S.Ct. at 2851. As will be shown below, we conclude that there is both a reasonable limiting construction of the regulation and a core of identifiable conduct that may be constitutionally controlled on federal property.
 
 
 17
 Two district courts have held that section 101-20.304 is unconstitutionally overbroad because it is not conducive to any limiting construction. See United States v. Parisi, 564 F.Supp. 855, 860-61 (N.D.Ill.1981); Townsend v. Carmel, 494 F.Supp. 30, 35-36 (D.D.C.1979) (also holding that the regulation was unconstitutionally vague). Both district courts reasoned that the regulation granted FPS officers unfettered discretion to exercise limitless police powers. Parisi, 564 F.Supp. at 860-61; Townsend, 494 F.Supp. at 35.
 
 
 18
 Two courts of appeal, however, have held that section 101-20.304 is not unconstitutionally overbroad because it could be properly circumscribed with a limiting construction that would confine the statute to permissible applications. See United States v. Bader, 698 F.2d 553, 556 (1st Cir.1983); United States v. Shiel, 611 F.2d 526, 528 (4th Cir.1979). In Bader, seventeen defendants conducted a sit-in inside a post office in which they blocked the doorway leading to a draft registration room. After refusing to comply with the FPS officers' instructions to move, defendants were arrested. They were convicted of violating, inter alia, section 101-20.304. On appeal to the First Circuit, defendants argued that, inter alia, their convictions violated rights protected by the first amendment. The court concluded that the first amendment did not bar their conviction. Bader, 698 F.2d at 555-56. The court reasoned that section 101-20.304 was not overbroad "since [it] may be interpreted to refer to those directions of federal protective officers which are necessary 'to insure the orderly conduct of government business.' " Id. at 556 (quoting Cassiagnol, 420 F.2d at 874). Rather than being aimed at speech, section 101-20.304 addressed "ordinary conduct legitimately subject to regulations." Bader, 698 F.2d at 556.[5]
 
 
 19
 In Shiel, defendant and others laid down in a passageway at the Pentagon, thereby obstructing pedestrian traffic. Defendant and others ignored the FPS officials' request to remove themselves from the floor. Defendant was convicted for violating section 101-20.304. The Fourth Circuit concluded that "[defendant's] unjustified refusal was not protected by the First Amendment." Shiel, 611 F.2d at 528. The court reasoned that to the extent that his conduct was protected as "symbolic speech," such protection "dissipated when [defendant] went beyond expression, and refused to obey a reasonable and legitimate order to cease blocking the passage of others." Id. at 527. Further, the court observed that the regulation was not substantially overbroad because "the regulation has been uniformly construed by the magistrates and judges to require obedience to only proper directions issued thereunder." Id. at 528 (emphasis in original).
 
 
 20
 Although we follow the conclusions of Bader and Shiel, we do not adopt their rationales. Those cases limited construction of the regulation to those orders that are "necessary," Bader, 698 F.2d at 556, or "proper," Shiel, 611 F.2d at 528. Instead, we find the rationale offered by the district court in this case to be the proper limiting construction. Section 101-20.304 can be properly limited by reading it in conjunction with the entirety of 41 C.F.R. subpart 101-20.3. The other regulations in that subpart identify a core of conduct that may constitutionally be controlled on federal property in order to preserve the normal functioning of federal facilities.[6] See Cassiagnol, 420 F.2d at 873-74. The proper scope of section 101-20.304 is derived not from reading it in isolation, but from a careful consideration of the complete regulatory scheme of federal property management against the backdrop of its policies and objectives. Although not convicted under the other regulations in subpart 101-20.3, the entire context of that subpart provides a limit to what may properly be reached under section 101-20.304. For example, section 101-20.305 proscribes conduct that "obstructs the usual use of entrances ... which otherwise impedes or disrupts the performance of official duties by Government employees, or which prevents the general public from obtaining the administrative services provided on the property in a timely manner." Construed in proper context, the regulation at issue is not a grant of unfettered discretion to FPS officials. Rather, it may reasonably be circumscribed by the circumstances encompassed within the other regulations of subpart 101-20.3.
 
 
 21
 Such a method of construction is not without precedent. In fashioning a reasonable limiting construction of a different regulation of conduct on federal property under what is now the same subpart, the Fourth Circuit reasoned: "The regulation here attacked could be applied only to situations involving government property under the charge and control of GSA and only in conjunction with other rules and regulations pertaining to government property." Cassiagnol, 420 F.2d at 873 (emphasis added); see also Shuttlesworth v. Birmingham, 82 U.S. 87, 93, 86 S.Ct. 211, 214-15, 15 L.Ed.2d 176 (1965) (recognizing that the state court narrowly construed a city ordinance by reading it in conjunction with the entire chapter in which it appeared).
 
 
 22
 Viewed in relation to the subpart's plainly legitimate sweep, the alleged overbreadth of the challenged regulation is not sufficiently "real" or "substantial" so as to render it unconstitutional. See Broadrick, 413 U.S. at 615, 93 S.Ct. at 2917-18. As we have reasoned: "Overbreadth scrutiny is less rigid when the questioned legislation regulates 'conduct in the shadow of the First Amendment, but do[es] so in a neutral, noncensorial manner.' " Gilbert, 813 F.2d at 1531 (quoting Broadrick, 413 U.S. at 614, 93 S.Ct. at 2917). Even if the regulation "may deter protected speech only to some unknown extent, we cannot justify invalidating the statute and thereby prohibit the government from regulating conduct within its power to proscribe." Gilbert, 813 F.2d at 1531.
 
 
 23
 Because a reasonable limiting construction can be placed on the challenged regulation, we hold that section 101-20.304 is not substantially overbroad.[7]
 
 2. Vagueness
 
 24
 Under the void-for-vagueness doctrine, a penal statute must "define the criminal offense with sufficient definitiveness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1982); see also Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); Westbrook, 817 F.2d at 531.
 
 
 25
 Given the limited construction that may reasonably be imposed on the regulation as discussed supra, section 101-20.304 identifies with sufficient definitiveness what a person must do, what type of orders and directions they must obey, and a fair warning of the types of conduct that is prohibited. Whatever lack of specificity or imprecision that may exist in section 101-20.304 is clarified when it is properly viewed in context with the entire scheme of regulations under subpart 101-20.3. Because the regulatory context provides appropriate guidelines, this regulation does not permit a " 'standardless sweep' " that allows FPS officials and government prosecutors " 'to pursue their personal predilections.' " Kolender, 461 U.S. at 358, 103 S.Ct. at 1858 (quoting Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)). Accordingly, we find that the regulation is not void for vagueness.[8]
 
 CONCLUSION
 
 26
 Because defendants' motion for jury trial was properly denied and because 41 C.F.R. Sec. 101-20.304 (1986) is within constitutional bounds, we affirm.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 We have recognized exceptions to the emphasis on the maximum authorized penalty as the major criterion of the seriousness of an offense. In particular, we have allowed consideration of serious collateral consequences that attach to a conviction, the actual nature of the offense, and other precedent and practices that indicate the seriousness of an offense. See United States v. Craner, 652 F.2d 23, 25-27 (9th Cir.1981); Jenkins, 734 F.2d at 1326 n. 3; see also United States v. Arbo, 691 F.2d 862, 864 (9th Cir.1982)
 Relying on Craner, defendants contend that because their conviction may have the collateral consequence of infringing or chilling their first amendment rights, their case is sufficiently serious to require a jury trial. Defendants draw our attention to United States v. Thomas, 574 F.Supp. 197 (D.D.C.1983) and ask us to adopt a per se rule that a jury trial is required for all petty offenses when first amendment issues are raised. We decline to do so.
 Thomas and Craner are distinguishable in that defendants in both cases faced a maximum authorized penalty right at the Baldwin line: six months' imprisonment and/or a $500 fine--in stark contrast to what defendants faced here. The maximum authorized penalty in the case at bar remains the best objective indication of the seriousness of the offense. Although first amendment rights are implicated, the first amendment does not grant defendants the right to obstruct a doorway in a federal building during a protest demonstration or to disregard an FPS official's reasonable order to cease blocking the doorway. See Cox v. Louisiana, 379 U.S. 536, 554-55, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965); see also Bachellar v. Maryland, 397 U.S. 564, 571, 90 S.Ct. 1312, 1316, 25 L.Ed.2d 570 (1970); United States v. Bader, 698 F.2d at 553, (1st Cir. 1983); United States v. Shiel, 611 F.2d 526, 527-28 (4th Cir. 1979). Whatever collateral consequences may attach to the conviction is not sufficient to raise an offense punishable by only thirty days' imprisonment and/or a $50 fine to a serious offense.
 
 
 [2]
 Although irrelevant to the outcome of this case, we note that the maximum authorized penalty for violations of subpart 101-20.3 was later increased to "a fine of not more than $500 or imprisonment of not more than 6 months, or both." 41 C.F.R. Sec. 101.20.315 (1987) (citing 18 U.S.C. Sec. 1). It is unclear how this increased penalty comports with 40 U.S.C. Sec. 318c, which continues to prescribe penalties of not more than $50 and/or thirty days imprisonment
 
 
 [3]
 It has been a common practice to have bench trials for cases under section 101-20.304, even when the first amendment is undoubtedly implicated. See Bader, 698 F.2d at 554 (involving sit-in inside of post office); Shiel, 611 F.2d at 527 (4th Cir.1979) (involving protest in Pentagon). Trials involving other regulations of conduct on federal property under subpart 101-20.3 likewise have been routinely conducted without a jury. See, e.g., United States v. Sachs, 679 F.2d 1015, 1017 (1st Cir.1982) (involving violation of sections 101-20.304 and 101-20.305 for "unreasonably obstruct[ing] the usual use of ... elevators" during an anti-draft demonstration in a post office/courthouse); United States v. Rankin, 616 F.2d 1168, 1169 (10th Cir.1980) (involving violation of what is presently section 101-20.305, which prohibits conduct that "impedes or disrupts the performance of official duties by Government employees"); United States v. Cassiagnol, 420 F.2d 868, 871 (4th Cir.), cert. denied, 397 U.S. 1044, 90 S.Ct. 1364, 25 L.Ed.2d 654 (1970) (involving violation of section 101-19.304, which prohibited "unwarranted loitering ... or assembly" and "unseemly or disorderly conduct," during an anti-war demonstration at the Pentagon)
 As a so-called "compromise" position, defendants draw our attention to Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), which extended the sixth amendment right to counsel. In Argersinger, the Supreme Court held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." Id. at 37, 92 S.Ct. at 2012. Defendants call upon us to make a similar extension of the sixth amendment right to trial by jury in cases where imprisonment may be imposed, at least when first amendment rights are involved. As defendants are forced to concede, however, the Supreme Court explicitly distinguished the analyses behind the right to jury trial and the right to counsel, concluding that they are historically separate. Id. at 29-31, 92 S.Ct. at 2008-10. The Argersinger Court clearly recognized that the right to trial by jury was limited to trials where the potential punishment was imprisonment for six months or more. Id. at 29, 92 S.Ct. at 2008-09. Moreover, the Court reasoned that "[w]e reject ... the premise that since prosecutions for crime punishable by imprisonment for less than six months may be tried without a jury, they may also be tried without a lawyer." Id. at 30-31, 92 S.Ct. at 2009. Because the defendants' proposed leaping extension of the right to trial by jury to all cases where incarceration may be imposed is unwarranted under the reasoning and holding of Argersinger, we reject it.
 
 
 [4]
 Although irrelevant to the outcome of this case, we note that the 1987 version of this regulation has been modified in an apparent attempt to clarify its meaning:
 Sec. 101-20.304 Conformity with signs and directions.
 Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal Protective Officers and other authorized individuals.
 
 
 [41]
 C.F.R. Sec. 101-20.304 (1987) (emphasis added)
 
 
 [5]
 The Bader court also noted that the district court in Townsend, discussed supra, "followed a doctrine of overbreadth somewhat at odds with the view that the Supreme Court set forth in Broadrick." Bader, 698 F.2d at 557
 
 
 [6]
 Chapter 101 of Title 41 C.F.R. deals with "Federal Property Management Regulations." Part 101-20 addresses "Management of Buildings and Grounds." Subpart 101-20.3 is entitled "Conduct on Federal Property." The regulations promulgated in subpart 101-20.3 provide a comprehensive scheme of federal property management; in particular, the regulations govern inspection of packages and briefcases brought into federal property (Sec. 101-20.301); admission to federal property (Sec. 101-20.302); preservation of federal property against disposal of rubbish, willful destruction or damage, theft, and creation of hazards (Sec. 101-20.303); disturbances, loitering, disorderly conduct (Sec. 101-20.305); gambling on federal property (Sec. 101-20.306); use of alcoholic beverages and narcotics (Sec. 101-20.307); soliciting, vending, and debt collection (Sec. 101-20.308); distribution and posting of handbills (Sec. 101-20.309); photographs for news, advertising, or commercial purposes (Sec. 101-20.310); admittance of dogs and other animals (Sec. 101-20.311); vehicular and pedestrian traffic (Sec. 101-20.312); weapons and explosives (Sec. 101-20.313); and discrimination on federal property (Sec. 101-20.314). The authority for these regulations is derived from 40 U.S.C. Sec. 318a, with the penalties of not more than $50 and/or imprisonment for not more than 30 days for violations set forth in 40 U.S.C. Sec. 318c. For a discussion of cases upholding the constitutional validity of some of these regulations, see Annotation, Validity of 40 U.S.C.S. Secs. 318-318d and Implementing Regulations, Governing Protection of Federal Buildings and Other Areas Under Jurisdiction of General Services Administration, 15 A.L.R. Fed. 932 (1973 & Supp.1987)
 
 
 [7]
 Defendants repeatedly cite Shuttlesworth v. Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965) to support their contention that section 101-20.304 is unconstitutionally overbroad. Shuttlesworth dealt with violations of two city ordinances in Birmingham, sections 1142 and 1231. Section 1142 made it unlawful to "so stand, loiter or walk, upon any street or sidewalk ... as to obstruct free passage over, on or along said street or sidewalk." The second part of section 1142 also made it "unlawful for any person to stand or loiter upon any street or sidewalk ... after having been requested by any police officer to move on."
 "Literally read," the Supreme Court observed, the second part of section 1142 " 'does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat.' " Id. at 90, 86 S.Ct. at 213 (quoting Cox v. Louisiana, 379 U.S. 536, 579, 85 S.Ct. 453, 469, 13 L.Ed.2d 471 (1965) (Black, J., concurring in part, and dissenting in part)). However, the Supreme Court did not strike the ordinance down as facially overbroad. It reasoned that the Alabama Court of Appeals "has not read Sec. 1142 literally, but has given to it an explicitly narrowed construction." Shuttlesworth, 382 U.S. at 91, 86 S.Ct. at 214 (emphasis added). Specifically, the state court had ruled that " 'the mere refusal to move on after a police officer's requesting that a person standing or loitering should do so is not enough to support the offense.... [T]here must also be a showing of the accused's blocking free passage....' " Id. (citations omitted). The Court therefore concluded that "so construed, we cannot say that the ordinance is unconstitutional, though it requires no great feat of imagination to envisage situations in which such an ordinance might be unconstitutionally applied." Id. Because it was not clear whether the judge based the conviction on the proper construction of the ordinance, the Court set aside the conviction. Id. at 92, 86 S.Ct. at 214.
 The second ordinance, section 1231, made it an offense "to refuse or fail to comply with any lawful order, signal or direction of a police officer." Like section 1142, the Court noted that "the literal terms of this ordinance are so broad as to evoke constitutional doubts of the utmost gravity." Id. at 93, 86 S.Ct. at 214. Again, however, the Court did not strike down the ordinance as facially overbroad because the Alabama Court of Appeals "has confined the ordinance to a relatively narrow scope." Id. The Alabama court had reasoned that " '[t]his section appears in the chapter regulating vehicular traffic, and provides for the enforcement of the orders of the police department in directing such traffic.' " Id. (citation omitted). Because the defendant, when directed to move on, was a pedestrian not around a vehicle and the arresting policeman was not directing traffic, the Court reversed the conviction under section 1231 for lack of any evidence to support the alleged violation. Id. at 95, 86 S.Ct. at 215-16.
 Similarly, a literal reading of section 101-20.304 out of context would lead to the facile conclusion that it is overly broad. However, as discussed supra, it may be construed narrowly and properly limited by the context of the entire regulatory scheme of subpart 101-20.3.
 
 
 [8]
 Relying on Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 497, 102 S.Ct. 1186, 1192-93, 71 L.Ed.2d 362 (1982), the government contends that defendants have the burden of showing that the regulation is impermissibly vague in all of its applications. The government reaches this position by concluding that the regulation does not directly involve first amendment rights. In Hoffman, the Supreme Court reasoned:
 [After facial overbreadth analysis, the] court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is vague in all of its applications.
 Id. at 494-95, 102 S.Ct. at 1191-92 (emphasis added). In United States v. Mazurie, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975), the Court observed that "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." Id. at 550, 95 S.Ct. at 714. The government is too quick in concluding that first amendment rights are not implicated here. Unlike the case at bar, Hoffman involved economic regulations of commercial speech subject to a "less strict" vagueness test. 455 U.S. at 498, 102 S.Ct. at 1193. Mazurie involved an economic regulation of alcohol distribution in Indian territory. 419 U.S. at 545, 95 S.Ct. at 712. Because first amendment rights are implicated in the instant case, we instead apply the first amendment vagueness standards as enunciated in Kolender, 461 U.S. at 357, 103 S.Ct. at 1858, and Papachristou, 405 U.S. at 162, 92 S.Ct. at 843. As we discuss supra, the regulation survives this first amendment vagueness test.