UNITED STATES of America, Plaintiff,

v.

**Eldridge John BROUSSARD, Jr., et al., Defendants.**

**Crim. No. 91–39–MA.**

United States District Court, D. Oregon.

April 26, 1991.

---

8. *Id.*

Stephen Peifer, Asst. U.S. Atty., Portland, Or., Norajean Flanagan, Deputy Chief, Karla Dobinski, Atty., Criminal Sec-

**1538**

tion, Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Steven Wax, Portland, Or., for defendant Eldridge Broussard, Jr.

Marc Blackman, Portland, Or., for defendant Walter Terry Barnett, Jr.

Robert Reid, Portland, Or., for defendant Sherin Melinda Jackson.

Emily Simon, Portland, Or., for defendant Carolyn VanBrunt.

Ron Hoevet, Portland, Or., for defendant Alvin Broussard.

Diane Stuart, Portland, Or., for defendant Constance Z. Jackson.

Mark Weintraub, Portland, Or., for defendant Josie R. Foust.

Frank Stoller, Dundee, Or., for defendant Willie Chambers.

## OPINION

MARSH, District Judge.

Defendants are charged in a thirty count indictment with conspiracy under 18 U.S.C. § 241 ("Conspiracy to deprive others of Constitutional Rights") and twenty-nine counts of involuntary servitude under 18 U.S.C. § 1584 ("Sale into Involuntary Servitude").[1] The government contends that defendants, all members of the "Ecclesia Athletic Association," entered into a conspiracy to market children in their organization as a superior athletic "exhibition team" in an effort to gain corporate sponsors. The indictment charges all defendants with participation in a plan to force the children to engage in rigorous exercise, deprive them of an adequate diet, clothing, housing and schooling and to threaten physical punishment for failure to perform. The indictment further alleges that the children were systematically beaten and mentally abused for the purpose of maintaining discipline and the childrens' compliance in the plan.

## SUMMARY OF THE MOTIONS

Defendants move for a declaration that the Victims' Rights Act does not apply to the facts of this case and was intended to apply only to "traditional" child abuse cases, and in the alternative, that several portions of the Act are unconstitutional. Specifically, defendants contend that § 3509(d), entitled "Privacy Protection," infringes upon their 5th and 6th Amendment Rights by inhibiting their ability to investigate and adequately prepare a defense, and upon their first amendment right to a "public" trial. Defendants further contend that § 403 of the Act, which provides for criminal contempt sanctions for any violation of the privacy protection provision of the act, creates an unconstitutional burden upon defendants' First Amendment Rights of speech and religious association.[2]

The government also moves for a "speedy trial" pursuant to the Federal Victims' Protection and Rights Act of 1990, 18 U.S.C. § 3509(j). The government requests a summer trial date in order to accommodate the children's schedule with the least amount of disruption to their lives. Defendants oppose this motion on the grounds that they will lack adequate time to prepare, that the Act should not apply to this case, and on the basis that the Act is unconstitutional. In addition, defendants seek an order declaring this a "complex" case under 18 U.S.C. § 3161.

## THE ACT

Before I can analyze any of the issues raised in these motions, I must begin with a basic understanding of the purposes and aims of the Act itself. First, the Victims' Rights Act was enacted as part of the Comprehensive Crime Control Act of 1990. Although the relevant portion of the Act is

---

1. Each count charges all defendants with willfully holding an unnamed child in involuntary servitude. Thus, the 29 counts represent 29 different child-victims.

2. The Oregonian's motion to intervene, filed ten days after defendants' motion against the Act, alleges that the Act's Privacy protection provision constitutes an infringement of the press'

right to access to public criminal proceedings under the First Amendment. Because I felt the need to address defendants' discovery concerns as expeditiously as possible, defendants' motion regarding their right to a public trial will be addressed together with the Oregonian's motion on May 14, 1991.

entitled a "Victims" rights Act, it is directed solely to special procedural problems that arise in cases in which children are victims of child abuse or are witnesses to a crime committed against another person. *See* § 3509(a)(2).

The legislative history indicates that Congress was concerned about the increase in child abuse cases nationwide, and in particular, statistics revealing a high incidence of child abuse on Indian reservations. Thus, while recognizing that most cases involving child abuse would proceed through the states, Congress felt the need to keep pace with procedural innovations enacted by states for dealing with unique problems associated with child abuse prosecutions. H.R.Rep. No. 101–681, 101st Cong., 2d Sess., pt. 1 (1990), reprinted in 1990 U.S.Code Cong. & Admin.News 6472, 6571; Senate Congressional Record, June 28, 1990 S. 8976 (findings reveal that twenty percent of Indian children are sexually abused).

The first part of the Act, subsection (a), provides definitions of terms to be used throughout the section. In brief outline form, the Act does the following:

(1) Subsection (b), patterned after the Supreme Court's decision in *Maryland v. Craig,* —— U.S. ——, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), permits a closed circuit television alternative to live, in-court testimony provided the trial court determines that such a procedure is necessary due to the likelihood of emotional trauma to the child;[3]

(2) Subsection (c) provides specific rules for conducting competency examinations of anticipated child witnesses;

(3) Subsection (d) seeks to ensure the victims' privacy by providing specific guidelines for handling "confidential" documents both in and outside of the courthouse;

(4) Subsection (e) provides guidelines to guide the judge's discretion in determining whether to close the courtroom to the public during the testimony of a child;

(5) Subsection (f) adds a new element to a presentence report under Fed.R.Crim.P. 32(c) by requiring the preparation of a child victim impact statement;

(6) Subsection (g) provides for the use of a "multidisciplinary child abuse team" to assist child victims and witnesses by providing medical and psychological examinations, service coordination and training for judges, litigators and court officers;

(7) Subsection (h) gives the court the power to appoint a guardian ad litem;

(8) Subsection (i) gives the child the right to have an adult attendant present with him or her throughout court proceedings;

(9) Subsection (j) provides that, upon motion of the government, the court may designate the case as being of "special public importance" and shall "expedite the proceeding;"

(10) Subsection (k) extends the federal statute of limitations for offenses involving child abuse;

(11) Subsection (*l*) gives the court discretion to permit the use of testimonial aids; and

(12) The statute defining "contempt," 18 U.S.C. § 401, is amended to include within its ambit any "intentional" violation of the privacy protection provision, 18 U.S.C. § 3509(d).

### DISCUSSION

I. *Privacy Protection: § 3509(d)*

a. Applicability of the Act

 Defendants argue that the Act should not apply to this case but should be limited to traditional child abuse cases which fall within federal jurisdiction.[4]

---

3. This subsection also provides similar guidelines for a video deposition.

4. Defendants also contend that the definitions in subsection (a), for such terms as "child abuse" "mental injury" and "negligent treatment" are impermissably vague and invade the province of potentially lawful private parental rights. However, the fact that the terms could conceivably encompass lawful activity does not constitute grounds for invalidation where the terms could also just as easily describe unlawful activity. *See Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (upholding state 'disorderly conduct' statute).

Subsection (a)(2) defines "child" as used in the Act to mean anyone who is under the age of 18, and who is "alleged to be—(A) a victim of a crime of physical abuse, sexual abuse or exploitation; or (B) a witness to a crime committed against another person."

The "involuntary servitude" and conspiracy allegations in this case, are comparable to a RICO case in which the charge constitutes a "pattern" of underlying claims. The "gravamen" of the government's complaint is that the alleged child abuse took place to such an extent and for such an extended period of time as to result in the enslavement of the children.[5] Thus, the indictment in this case alleges a lengthy pattern of incidents of child abuse and criminal neglect which falls within the literal definition of "child" under subsection (a)(2) of the Act.[6]

Based upon the foregoing, I find that the language of the Act is broad enough to encompass cases involving children who are victims of abuse and criminal neglect. Because the acts underlying the indictment involve such activity, the Act applies to this case.

### b. Interference with Discovery

■ Defendants challenge the disclosure provisions of the Act on the grounds that they inhibit their Fifth and Sixth Amendment rights to adequately prepare a defense. Defendants argue that the Act's provisions are so vague and overbroad as to potentially encompass the lawful activity of investigating and preparing their case, such that defense counsel and those hired by defense counsel could conceivably be subject to criminal contempt sanctions for any violation of this provision. Defendants' counsel raise pragmatic concerns about their ability to interview witnesses and potential witnesses without disclosing the names of specific children or "other information concerning" those children. Further, defendants' counsel contends that the restrictions on disclosure could apply to support staff, such as investigators, photo developers and legal assistants making it difficult, if not impossible for them to complete discovery expeditiously. Defendants contend that these provisions have a "chilling" effect.

The government argues that defendants misconstrue the statute and indicate that it has no objections to modifying the court's February 19, 1991 order regulating the filing of pleadings. Defendants counter that such a modification would improperly "rewrite" the statute.

Specifically, defendants challenge subsection (d)(1) which provides that all documents that disclose the name or "any other information concerning a child" shall not be disclosed except to persons "who, by reason of their participation in the proceeding have reason to know such information." Subsection (d) applies to:

"(i) all employees of the Government connected with the case, including employees of the Department of Justice, and law enforcement agency involved in the case, and any person hired by the government to provide assistance in the proceeding;

(ii) employees of the court;

(iii) the defendant and employees of the defendant, including the attorney for the defendant and persons hired by the defendant or the attorney for the defendant to provide assistance in the proceeding; and

(iv) members of the jury.

First, it must be made clear that my February 19th "Order Regulating the Fil-

---

**5.** Although I recognize that the elements necessary to sustain a conviction for involuntary servitude under §§ 241 and 1584 differ from those of criminal child abuse or neglect, the alleged actions are relevant to, and in fact are an integral part of the alleged conspiracy to oppress and enslave the children. *See United States v. Lewis,* 644 F.Supp. 1391, 1393 (W.D.Mich.1986). However, my conclusion here regarding the applicability of the Act should in no way be construed as expressing any opinion as to applica-

tion of collateral estoppel based upon state court proceedings.

**6.** During oral argument on April 24, 1991, the government confirmed that it intended to call children as witnesses at trial. Again, however, my ruling today should not be construed as an indication of how such testimony might be presented.

ing of Pleadings," relates to subsection (d)(2) and filing pleadings under seal, *not* to subsection (d)(1) which relates to disclosure of documents in the custody of counsel. Therefore, the government's suggestion that I modify the order to cure any confusion is misplaced.

■ Second, this case is particularly unusual in that no one has been charged with a violation of the Act, which would usually deprive the complainant of standing to raise the issue.[7] *See Stoianoff v. State of Montana,* 695 F.2d 1214, 1222 (9th Cir. 1983) (due process considerations not triggered by possibility of arbitrary enforcement). However, in light of counsels' sincere concerns that the provisions may subject them, or members of their staff to criminal sanctions, thus "chilling" their ability to adequately prepare a defense, some guidance from the court is appropriate.

■ Under the "void for vagueness doctrine," a statute must define the criminal offense with sufficient definiteness "that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Stansell,* 847 F.2d 609, 615 (9th Cir.1988). Similarly, an attack based upon "overbreadth" must demonstrate that the statute reaches a "substantial number of impermissible applications." *New York v. Ferber,* 458 U.S. 747, 772, 102 S.Ct. 3348, 3362, 73 L.Ed.2d 1113 (1982); *United States v. Austin,* 902 F.2d 743, 744 (9th Cir.1990). Wherever possible, a federal court confronted with an overbreadth challenge to a federal statute, should "construe the statute to avoid constitutional problems if the statute is subject to such a limiting construction." *Id.,* at 770.

The Supreme Court has set very high standards for invalidating a statute based upon "vagueness" or "overbreadth." As the Court explained in *Colten v. Kentucky*:

"The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert automatically into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conditions and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited."

*Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974). *See e.g., Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948) (obscenity statute vague); *Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) (ordinance prohibiting "annoyance" vague); and a "Communist Control" statute, *see Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) ("communist control" statute).

■ The law is equally clear that the court may not "re-write" the statute in order to salvage it from unconstitutional "vagueness" or "overbreadth." For example, in *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), the defendant was convicted for violations of the wagering statutes. The Supreme Court held that a statute which required a gambler to file a special tax registration declaring that he was in the business of accepting wagers constituted a violation of the defendant's fifth amendment privilege against self-incrimination. The government argued that the registration provision could be saved by reading in a limitation that any information gathered by the IRS could not be disclosed to other government agencies. The Court rejected the proffered limitation, finding it inconsistent with Congress' "plain intent" that information obtained from the registration be used to

---

7. The "traditional rule" is that a person may not challenge the constitutionality of a statute on the ground that it may "conceivably be applied unconstitutionally to others in situations not before the court." *New York v. Ferber,* 458 U.S. 747, 768, 102 S.Ct. 3348, 3360, 73 L.Ed.2d 1113 (1982). There is a limited exception to this rule where a defendant raises a first amendment challenge and can demonstrate that overturning the statute is "justified by weighty countervailing policies." *Id.*

However, when the government seeks to apply a particular criminal law to protected conduct, courts should strive to reverse the particular conviction rather than invalidating the law *en toto. See id.,* at 773, 102 S.Ct. at 3363.

assist prosecuting authorities. *Id.*, at 58–59, 88 S.Ct. at 708.

However, while I may not re-write a statute, I may determine the proper scope of the statute by a "careful consideration of the complete regulatory scheme" against the "backdrop" of Congress' policies and objectives as disclosed in legislative history. *Stansell*, 847 F.2d at 614.

In this case, subsection (d)(1)(A)(ii) provides that defense counsel may disclose documents with information that concerns a child to "persons who, by reason of their participation in the proceeding, have reason to know such information." What little legislative history exists indicates that the sole purpose of this statute was to provide the district courts with "tools" to make a child's experience with the criminal justice system less traumatic and to limit the child's exposure to the public. H.R. 13295, October 27, 1990, testimony of R. DeWine. There is nothing, however, anywhere within the text of the statute or the legislative history which indicates an intent to restrict a defendant's rights of discovery. Thus, I find that these provisions must be read in a manner consistent with defendants' traditional and well established rights to a full, complete and unfettered investigation.[8]

Finally, in analyzing whether the challenged phrase "or other information concerning the child" is unconstitutionally vague, I must again examine the overall goals and objectives of the legislation. Congress' focus was upon protection of child victims and witnesses from public exposure rather than the inhibition of defendants' rights to a full and complete understanding of the charges against them. In recognition of this policy, Congress specifically provided that disclosure of a child's name or other information concerning the child could *not* be withheld from the defendant or his or her counsel. *See* § 3509(d)(4).

The legislative history, although scant is helpful. In describing the confidentiality provision, Congressman DeWine explained that the "[b]ill makes it easier for a child to testify in court ... it forbids the release of the witness's name and address." H.R. 8754, October 3, 1990. *See also* Congressional and Administrative News, 101st Cong. 2nd Sess., P.L. 101–647 (Special procedures include privacy and address protection to protect child witnesses by restricting the public release of any information identifying the child witness).

In light of the overall legitimate policies and goals of the legislation and the legislative history, this court may fashion a reasonable limiting construction upon the challenged phrase. *See Stansell*, 847 F.2d at 614. In light of this background and the context in which the provision appears, only that information concerning the child which would lead to the identification of a particular child should be kept confidential.

A review of the redacted indictment provides an example consistent with this analysis. At page eleven of the indictment, paragraph thirty describes an incident which took place in early September, 1988, in which a child attempted to escape and was punished by several named defendants by tying her to a chair in the basement and refusing to give her food or water. The only information redacted from the paragraph describing this incident is the name of the child.

I recognize that there are times when the distinction between judicial "re-writing" and permissible statutory construction seems slight. The provisions in Victims' Rights Act regulating confidential information are highly detailed and require some time and consideration to discern. However, after a careful review of all of the Act's confidentiality provisions, I find that the protection afforded to child victims is consistent with the rules and safeguards governing the full and complete discovery rights of defendants facing criminal charges. In addition, unlike the situation confronting the Supreme Court in *Marchetti*, my interpretation and broad reading of the statute is not inconsistent with the stat-

---

**8.** In fact, the statutory language attempts to preserve the defendant's discovery rights by expressly excluding restriction of redacted information about the child to "the defendant and employees of the defendant." *See* § 3509(d)(1)(B)(iii) and § 3509(d)(2).

ed policies and objectives of Congress. The investigative functions of defense counsel, including disclosure of "confidential" documents to witnesses, potential witnesses and to persons hired by defense counsel to assist in the investigation and preparation of the case, are unencumbered and permissible under the statute. If the government ever attempted to apply the criminal penalty of the statute to defense counsel, or to someone hired by defense counsel, the appropriate action for the court confronted with such a situations would be to dismiss the indictment rather than invalidating the law as unconstitutional. *Ferber*, 458 U.S. at 773, 102 S.Ct. at 3363.

c. Free Association and Religion: § 3509(d)(1)

■ Defendants contend that the confidentiality provision of subsection (d)(1) infringes upon their first amendment rights of freedom of association and freedom of religion because it impermissably interferes with their ability to communicate with other members of the church about the charges filed against them.

Again, as a preliminary concern, none of the defendants have been charged with a violation of the confidentiality provision so our analysis is necessarily limited to the "chilling" effect created by a potential fear of prosecution. This is in sharp contrast to the cases relied upon by defendants for the proposition that the statute interferes with their free exercise of religion. *See Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (first and fourteenth amendment prohibited state from compelling Amish parents to send children to traditional high schools); and *United States v. Thomas*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (denial of unemployment compensation to employee fired for refusing to participate in armament production on religious grounds).

Even if I could entertain a first amendment challenge to this provision based upon a hypothetical scenario derived from the facts in this case, the language of the statute is sufficiently narrow to make such a hypothetical situation highly unlikely. First, the confidentiality provision is limited to disclosure of information contained in "documents" and "in connection with a criminal proceeding." *See* § 3509(d)(1). There is nothing in the statute to prohibit defendants from discussing the charges, their personal experiences or any knowledge they have independent of the information contained within any documents involved in this proceeding.

Based upon the foregoing, I find that defendants' challenge based upon an interference with their free exercise of religion is highly hypothetical and fails to raise an actual case or controversy. Even if defendants had standing to raise this issue, the statute is not so overbroad that there is a likelihood that it would encompass a "substantial" amount of protected activity.

d. Separation of Powers

■ Defendants' final challenge to the confidentiality provision is based upon Congress' alleged attempt to regulate who the trial judge may have present during the following "closed" proceedings: (1) the determination of whether a child's trial testimony should be taken by 2-way closed circuit television under § 3509(b); (2) videotaped depositions under § 3509(b)(2); and (3) and competency examinations under § 3509(c).

Under each of these proceedings, the statute provides a list of who may be present. This list includes the judge and a court reporter, but does not specifically include any member of the judge's staff. Under the same analysis urged earlier regarding a pragmatic reading of the statute, I read the term "judge" to include any member of my staff that, in my discretion, I consider necessary to assist me or to ensure the efficient management and disposition of these proceedings. I find nothing within the language or the history of the statute to indicate otherwise. However, if there is an attempt to regulate my discretion in determining who of my staff may be present at any hearing, I have grave doubts as to the constitutionality of such a legislative extension.

**1544**

## II. *Speed Trial: § 3509(j)*

 The government moves this court for an order designating this case as one of "special public importance," pursuant to § 3509(j). This subsection provides as follows:

"In a proceedings in which a child is called to give testimony, on motion by the attorney for the Government or a guardian ad litem, or on its own motion, the court may designate that case as being of special public importance. In cases so designated, the court shall, consistent with these rules, *expedite the proceeding and ensure that it takes precedence over any other.* The court shall ensure a speedy trial in order to minimize the length of time the child must endure the stress of involvement with the criminal process. When deciding whether to grant a continuance, the court shall take into consideration the age of the child and the potential adverse impact the delay may have on the child's wellbeing. The court shall make written findings of fact and conclusion of law when granting a continuance in cases involving a child.

(emphasis added).

The government requests a trial date sometime this summer in order to avoid conflicts with the children's school schedules. Defendants contend that subsection (j) is unconstitutional because it seeks to limit their time to prepare their defenses. Defendants further seek an order of the court designating this as a "complex case" pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii).[9]

As with their other challenges to the Act, defendant's contention that Congress sought to inhibit their 6th amendment rights to a fair trial are misplaced. The legislative history reveals that Congress intended to give the trial court a "tool" to expedite the pretrial and trial process "in the interests of protecting the best interests of child victims and witnesses in a specific case." Congressional News, P.L. 101–647. Thus, the presence of a child

victim or witness is but one *factor* that the court must take into consideration when confronted with a motion for a continuance. H.R. 8754, October 3, 1990; H.R. 13295, October 27, 1990.

Equally important is what this provision does *not* say. It does not provide specific dates, or require the court to set trials during school vacations. It further does *not* provide that the presence of a child witness will in anyway diminish the deference given to criminal defendants who seek continuances based upon a well-reasoned need for additional time to serve the "ends of justice," under § 3161(h)(8)(A).

Although the government is correct that the legal principles to be applied to this case are fairly straightforward, defendants have a herculean task facing them in sorting out over two years of discovery materials gathered by the government as well as conducting their own independent investigation. This task is exacerbated by the number of defendants and alleged victims involved since each counsel is going to have to sort through all of the material to discern what relates particularly to his or her client.

Based on the foregoing, I find that subsection (j) of the Act does not infringe upon defendants' Sixth Amendment rights to a adequately prepare for trial. The impact of this statute is limited and two-fold: first, it provides that the court must consider the presence of a child victim or witness when considering a motion for a continuance or any other action that might affect the Speedy Trial Act; and second, the court must give child abuse cases priority over other criminal cases. Because motions have been pending, no trial date has been set, and therefore, neither side has moved for a continuance of the trial date, I need not reach the issue of whether to designate this a "case of special public importance" or "complex" pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii). However, I see nothing in either provision which makes the two designations mutually exclusive.

---

**9.** Because no trial date has been set and, thus, defendants have not filed a motion for continuance, reference to 3161 is anticipatory and sole-

ly to give the court guidance in setting a trial date.

## CONCLUSION

Based on the foregoing, I find that the confidentiality and speedy trial provisions of the Federal Victims' Protection and Rights Act are constitutional and applicable to this case. Accordingly, defendants' motions against the Act, except insofar as their challenge based upon their right to a "public trial" is deferred, are denied. The government's motion for special designation under subsection (j) of the Act is deferred until a trial date is determined at our next scheduling conference, and defendants' motion in limine to exclude photographs from the hearing on April 24, 1991 is denied as moot.