5 F.3d 540
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Renee ALSEPT, et al., Defendants-Appellants.
 No. 92-30476.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 5, 1993.
Decided Sept. 13, 1993.
 
 1
 Appeal from the United States District Court for the Western District of Washington, No. CR-91-45-TSZ; Thomas S. Zilly, District Judge, Presiding.
 
 
 2
 W.D.Wash.
 
 
 3
 AFFIRMED.
 
 
 4
 Before: BEEZER and HALL, Circuit Judges, and ARMSTRONG*, District Judge.
 
 
 5
 MEMORANDUM**
 
 
 6
 The appellants challenge their convictions for failure to comply with the lawful direction of a Federal Protective Services (FPS) officer in violation of 41 C.F.R. Sec. 101-20.304. We affirm.
 
 
 7
 * When a defendant challenges the sufficiency of the evidence, we reverse only if, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).
 
 
 8
 Twenty-four appellants contend the evidence was insufficient to convict them on Count I because no rational trier of fact could have found that the order to close the building on January 14, 1991 was lawful beyond a reasonable doubt. Appellants do not contest the building was closed "to ensure the orderly conduct of government business," 41 C.F.R. 101-20.302, but they assert that the order was unlawful because the proper procedures were not followed for closing the building.
 
 
 9
 The regulation requires that "the decision to close the property shall be made by the designated official under the Occupant Emergency program after consultation with the building's manager and the ranking representative of the law enforcement branch responsible for protection of the facility or the area." 41 C.F.R. Sec. 101-20.302. The building manager, Mr. Kristiansen, testified that he made the decision after consulting with both the designated official and the law enforcement representative. From this evidence, a rational trier of fact could have found that the order to close the building was lawful.
 
 
 10
 Appellants assert that, as a matter of law, the orders could not have been lawful, since Lt. Walley of the FPS testified that he did not take part in the decision-making process. Walley, appellants state, was the ranking representative from law enforcement. In support of this assertion, appellants cite Walley's testimony that he was responsible for taking control of a demonstration to ensure that the federal facilities are properly protected and cared for and that the rights of the demonstrators are also properly cared for and maintained." He also testified that, "on occasion," he would be involved in making the decision to close the building in the event of a demonstration. However, neither Walley nor anyone else ever testified that he was the "ranking representative" from law enforcement. In fact, Walley stated his rank was that of acting deputy district commander at the time of trial. Kristiansen testified that Mr. Sparks was the ranking law enforcement representative "of the whole region" and that he consulted the law enforcement representative. There was sufficient evidence in the record for the magistrate to conclude that the orders complied with the regulation.
 
 II
 
 11
 A group of appellants who made a move to leave the building when the FPS officer announced that they were under arrest, and were then told they could not leave because they were already under arrest, contend their Sixth Amendment rights to counsel were violated because they were discouraged from testifying that they did not intend to disobey the FPS officer's orders. Though they did not object to the joint representation at trial, these individuals now assert that their attorneys had a conflict of interest, since the same group of attorneys jointly represented both them and other appellants who could not present such evidence of lack of intent to disobey. Perhaps in order to present a united front, the attorneys advised all of the appellants not to testify.
 
 
 12
 The magistrate judge did not "promptly inquire with respect to such joint representation and ... personally advise each defendant of their right to the effective assistance of counsel, including separate representation," as provided in Fed.R.Crim.P. 44(c). This failure alone does not mandate reversal. United States v. Crespo de Llano, 838 F.2d 1006, 1013 (9th Cir.1987). We reverse only when an "actual conflict of interest adversely affected [a defendant's] lawyer's performance." Id. (citation omitted).
 
 
 13
 We decline to hold that an "actual conflict of interest adversely affected" the performance of trial counsel in this case. Had these appellants been represented by separate counsel, they argue, they would have been able to present evidence that they did not intend to violate the lawful order of an FPS officer. Their trial counsel did argue that they did not intend to violate any order and that their effort to leave the building served as objective proof of that lack of intent. The videotape which showed these appellants attempting to leave was in evidence. After viewing the videotapes and reviewing all of the testimony, the magistrate judge found as a matter of fact that "all of the defendants in the lobby were given ample opportunity to leave prior to the arrest" but they "made no effort to do so. It was only after Lt. [Walley] actually told them he had placed them under arrest that they attempted to leave. This did not undercut in any way the willfulness of the violation." We hold that, even if there was an actual conflict, it did not adversely affect counsel's performance.
 
 III
 
 14
 Appellants contend that no rational trier of fact could find beyond a reasonable doubt that the orders providing the basis for the convictions on Counts II-IV were lawful. Appellants again raise the argument that 41 C.F.R. Sec. 101-20.302's procedures were not followed, and also state that the decision to regulate entry into the building on a "controlled access" basis was an unconstitutional prior restraint of their First Amendment rights. We decline to address these arguments, however. These orders were based on violations of 41 C.F.R. Sec. 101-20.305,[1] not Sec. 101-20.302, so their lawfulness is not contingent on whether Sec. 101-20.302's procedure was followed or whether access was being limited only to government employees at that time.
 
 
 15
 Though appellants intimate that the decision to arrest appellants for Counts II and III was "arbitrary and capricious" because it was "largely based" upon a region-wide policy to exclude demonstrators without permits from government buildings, a policy which appellants suggest contravened Sec. 101-20.302, the magistrate judge specifically found that the orders were based on the facts that the protestors were creating a nuisance and were obstructing the passageways. In Count II, three persons (including two appellants) were lying down in the center of the lobby and refused to leave until they were arrested. In Count III, nine or ten persons were squatting, kneeling, or lying on the floor in the lobby. Six persons remained (including two appellants) when told that they would be arrested if they did not leave. The evidence in the record supports the magistrate judge's findings. The magistrate judge correctly determined the appellants failed to comply with the lawful orders of an FPS officer on the authority of Sec. 101-20.305.
 
 
 16
 As to Count IV, appellant Plachta contends that there is no evidence in the record that he was obstructing access to the building. An FPS officer testified that Plachta was blocking employees from entering the building via a pathway through the demonstrators and that he ordered Plachta to move. There was sufficient evidence that a rational trier of fact could find that Plachta failed to comply with the lawful order of the officer not to obstruct the pathway.
 
 
 17
 The appellants also contend that the FPS officers' actions violated their First Amendment rights. As noted above, the FPS officers' orders were given to enforce the regulations and were not arbitrary. Hundreds of demonstrators were allowed to protest outside the building without interference throughout the four days of the protest. The government may limit the "right to use a public place for expressive activity" by "reasonable 'time, place and manner' regulations [as] may be necessary to further significant governmental interests." Grayned v. City of Rockford, 408 U.S. 104, 115 (1972); United States v. Stansell, 847 F.2d 609, 611 n. 1 (9th Cir.1988). Assuring that public buildings continue to function is such a significant government interest. Adderley v. Florida, 385 U.S. 39, 47 (1966); Cox v. Louisiana, 379 U.S. 536, 554-55 (1965).
 
 
 18
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Saundra Brown Armstrong, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 41 C.F.R. Sec. 101-20.305 provides:
 Any loitering, disorderly conduct, or other conduct on property which creates loud or unusual noise or a nuisance; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; or which prevents the general public from obtaining the administrative services provided on the property in a timely manner, is prohibited.