70 F.3d 121
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mikeal Glenn STINE, Defendant-Appellant.
 No. 94-17129.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 16, 1995.
Decided Nov. 8, 1995.
 
 Before: SCHROEDER, FLETCHER and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Mikeal Stine appeals from his conviction for contempt under 18 U.S.C. Sec. 401(3). He contends (1) that he was deprived of his constitutional right to a jury trial because the collateral consequences of his conviction were serious; (2) that the district court abused its discretion by acting as a witness in violation of Fed.R.Evid. 605; (3) that the district court abused its discretion by permitting the United States to impeach a defense witness by questioning him at length regarding his prior convictions; and (4) that there was insufficient evidence of willfulness to support his conviction.
 
 
 3
 We affirm the judgment of conviction.
 
 BACKGROUND
 
 4
 Mikeal Stine is currently an inmate of the Department of Corrections for the State of Arizona where he is serving a sixteen year sentence for conspiracy to commit aggravated assault. While in state prison, Stine filed a pro se civil rights action in federal district court alleging denial of access to the law library. The district court found that Stine had not exhausted his administrative remedies under the Arizona Department of Corrections ("ADOC") Inmate Grievance Procedures. The court stayed the action for ninety days pending exhaustion of remedies and ordered plaintiff "to proceed further with this action only after he has exhausted his administrative remedies under the ADOC Inmate Grievance Procedures."
 
 
 5
 Stine submitted a Notice of Exhaustion of Administrative Remedies declaring that he had exhausted all available administrative remedies under the ADOC Inmate Grievance Procedures. He attached a letter purportedly signed by an employee of the ADOC Central Office named D. Nelson stating that Stine had been removed from the Inmate Grievance Procedure.
 
 
 6
 The United States represented to the court that there was no ADOC employee named D. Nelson, that the letter purportedly from D. Nelson was a forgery, and that contrary to the representations in Stine's letter, Stine had failed to exhaust his administrative remedies before proceeding with his civil rights action. The district court issued an order to show cause why Stine should not be held in contempt and set the matter for trial.
 
 
 7
 At trial, government witnesses testified that no "D. Nelson" was employed with the ADOC at the time the letter purportedly from D. Nelson was written; that Stine had filed numerous grievances with the ADOC but had failed to exhaust his remedies; that a copy of the letter was not found in the prison institutional file; and that Stine had made no grievance appeals during the relevant time period to which the letter from D. Nelson could have been a response.
 
 
 8
 The defense argued that the exhaustion letter from "D. Nelson" had been slid under Stine's door and, after an initial period of puzzlement, Stine in good faith determined that his administrative remedies had been exhausted. Ronald Chevalier, Stine's cellmate at the time of the incident, testified that he saw Stine receive the letter under their cell door. A report from a handwriting expert concluded that the questioned signature "D. Nelson" was not the true and natural handwriting of the author of the signature and consequently neither Stine, nor any other individual, could be conclusively identified as the author of the signature.
 
 
 9
 Stine's Rule 29 motions for a judgment of acquittal were denied. The district judge found Stine guilty of contempt under 18 U.S.C. Sec. 401(c) and sentenced him to six months imprisonment to be served consecutive to his state prison term. The judge found that Stine knew or had reason to know that the inmate response letter purportedly signed by D. Nelson, however he obtained it, was fraudulent and did not serve to exhaust his administrative remedies.
 
 DISCUSSION
 1. Motion for a Jury Trial
 
 10
 Stine contends that the district court improperly denied his motion for a jury trial. He contends that the collateral consequences of possible loss of good time credit and dismissal of his underlying civil suit were sufficiently severe as to rebut the presumption that a defendant is not entitled to a jury trial for an offense with a maximum six-month sentence. The district court's denial of Stine's motion for a jury trial is reviewed de novo. United States v. Stansell, 847 F.2d 609, 611 (9th Cir.1988).
 
 
 11
 In contempt prosecutions under 18 U.S.C. Sec. 401(3), there are no definite sentencing limits. See 18 U.S.C. Sec. 401(3). The right to a jury trial in such cases is conditional, whereby only prosecutions for "serious" criminal contempt entitle the defendant to a jury trial. Frank v. United States, 395 U.S. 147, 149 (1969). A pretrial stipulation that the district court will not impose a sentence in excess of six months, as was entered in this case, renders a jury trial presumptively unnecessary. United States v. Marthaler, 571 F.2d 1104, 1105 (9th Cir.1978) (citing Taylor v. Hayes, 418 U.S. 488, 495 (1974)). "A defendant can overcome this presumption, and become entitled to a jury trial, only by showing that the additional penalties, viewed together with the maximum prison term, are so severe that the legislature clearly determined that the offense is a 'serious' one." United States v. Nachtigal, 113 S.Ct. 1072, 1074 (1993). Only penalties that are direct and result from state action may be considered. Blanton v. City of North Las Vegas, 489 U.S. 538, 543 n. 8 (1989).
 
 
 12
 Stine's possible loss of good time credits as a consequence of the contempt proceeding does not reflect a societal judgment that criminal contempt with a sentence of six months or less is a "serious" offense. See Nachtigal, 113 S.Ct. at 1073 (court must examine "objective indications of the seriousness with which society regards the offense" to determine whether defendant is entitled to a jury trial). That Stine was subject to possible loss of good time credits is not part of the nature of the offense, but rather an incidental effect not mandated by statute or regulation suffered by contempt defendants who happen to be already convicted of other crimes. Similarly, the possible dismissal of Stine's civil rights action does not reflect a determination of the seriousness with which society views his offense. The impact on the underlying proceeding of a contempt conviction is an incidental consequence of every such conviction. Additionally, Stine's civil rights action was subject to dismissal for failure to exhaust regardless of whether he was found guilty of contempt. Accordingly, the district court did not err in denying Stine's motion for a jury trial.
 
 
 13
 2. Introduction of the Court's Exhaustion Order
 
 
 14
 Stine contends that introduction of the district court's exhaustion order violated Rule 605 of the Federal Rules of Evidence ("The judge presiding at the trial may not testify in that trial as a witness."). The district court's ruling is reviewed for an abuse of discretion. United States v. Manning, 56 F.3d 1188, 1196 (9th Cir.1995).
 
 
 15
 Rule 605's prohibition against a judge testifying includes situations in which the judge, although not testifying on the stand, nevertheless assumes the role of a witness. See 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence p 605 (1994). Rule 605 is violated where a judge's statements "relate[ ] to facts which are within the power of the trier of fact to decide and the credibility of the judge-witness has a bearing on the weight of his statement." 27 Charles A. Wright & Victor Gold, Federal Practice and Procedure: Evidence Sec. 6063 (1990).
 
 
 16
 Rule 605's concerns are not implicated by admissibility of the district court's exhaustion order. The court's order was a certified, self-authenticating court filing, admissible as such. Fed.R.Evid. 902(4). The district judge's credibility was not at issue and he was not called upon to testify regarding facts within the province of the trier of fact. It is standard practice for a judge to try a contempt case based on violation of his previous order, and is acceptable unless the violation involves "disrespect" or "criticism" directed at the judge himself. Fed.R.Crim.P. 42(b); Ungar v. Sarafite, 376 U.S. 575 (1964) (defendant's criticism of court's rulings and failure to obey court order did not constitute a personal attack on the trial judge so productive of bias as to require judge's disqualification in contempt proceeding).[1] Accordingly, the district judge was competent to try the contempt proceedings and introduction of a certified copy of the court's order was proper.
 
 
 17
 3. Impeachment of Defense Witness Ronald Chevalier
 
 
 18
 Stine contends that the district court committed reversible error by allowing the prosecutor to engage in open-ended questioning of defense witness Ronald Chevalier regarding his prior convictions in violation of Rule 609 of the Federal Rules of Evidence. The district court's ruling is reviewed for an abuse of discretion. United States v. Manning, 56 F.3d 1188, 1196 (9th Cir.1995).
 
 
 19
 The United States concedes that "the government's open-ended line of questioning was improper in form." The general rule is that impeachment should be limited to the name of the crime, the time and place of conviction, and sometimes the punishment. McCormick on Evidence Sec. 42 at 151-52 (John W. Strong ed., 4th ed. 1992). The prosecutor should not be allowed to "add to the poignancy of the impeachment" by delving into the details. Id. Sec. 42 at 151. In this case, the prosecutor did delve into the details of Chevalier's prior crimes. This led Chevalier to explain that his theft conviction was for less than $750 and to list other convictions which may or may not have been felonies and which may or may not have been stale.
 
 
 20
 In spite of the prosecutor's regrettable open-ended questioning, any error was harmless. Chevalier's conviction for theft was a felony for which he was still serving his sentence. See Ariz.Rev.Stat. Sec. 13-1802(c) (1988) (theft under $750 classified as a class 4 felony). Subject to Rule 403 balancing, it was properly admitted under Rule 609. The details about the theft elicited in response to the prosecutor's questioning--that it involved less than $750--if anything lessened the prejudicial impact of the conviction. Because this was a nonjury trial, there is far less danger that the judge's verdict was affected by inadmissible evidence. E.E.O.C. v. Farmer Bros. Co., 31 F.3d 891, 898 (9th Cir.1994); see also United States v. Caudle, 48 F.3d 433, 435 (9th Cir.1995) ("[I]t would be most surprising if such potential prejudice had any significance in a bench trial."). Although the judge found Chevalier's testimony "questionable," he indicated that even giving credence to Chevalier's testimony, he would still find Stine guilty of contempt. For these reasons, any error was harmless.
 
 4. Sufficiency of the Evidence
 
 21
 In reviewing the sufficiency of the evidence, "[t]he test is whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict." United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990) (quoting United States v. Soto, 779 F.2d 558, 560 (9th Cir.1986), cert. denied, 484 U.S. 833 (1987)). If any rational trier of fact could have found the defendant guilty beyond a reasonable doubt to each element of the crime, the verdict should be upheld. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 22
 To prove Stine guilty of criminal contempt, the United States was required to prove the existence of a clear and definite order of the court which Stine willfully violated. United States v. Rylander, 714 F.2d 996, 1001 (9th Cir.1983). Stine does not contest that there was a clear and definite court order not to proceed in his civil rights action without exhausting his administrative remedies, and that he in fact proceeded without exhausting his remedies. Instead, Stine challenges the evidence of willfulness.
 
 
 23
 The United States presented evidence that no "D. Nelson" worked for the DOC and that no copy of the purported exhaustion letter signed by D. Nelson had been placed in Stine's DOC file. This supports an inference that the purported exhaustion letter signed by D. Nelson was not genuine.
 
 
 24
 The United States presented evidence that Stine knew the DOC's administrative procedures; was well-versed in the procedures for maintaining civil rights claims; and had not submitted a grievance appeal during the relevant time period to which the purported exhaustion letter conceivably could have been a response. This supports an inference that Stine did not have a good faith belief that the exhaustion letter was genuine.
 
 
 25
 Chevalier's testimony that Stine actually received the letter under his cell door lends support to Stine's theory that he did not forge the letter but in fact believed the letter was genuine. The trier of fact, however, was entitled to disregard Chevalier's testimony as not credible. Even accepting Chevalier's testimony as true, the testimony does not preclude a finding of willfulness. Chevalier said that Stine never told him whether the letter response related to an inmate grievance letter he had sent and that he and Stine had never discussed whether the response was genuine or fraudulent.
 
 
 26
 To prove willfulness, the United States did not have to prove that Stine himself forged the letter--only that Stine knew or must have known that he had not exhausted his administrative remedies. Cf. United States v. Claiborne, 765 F.2d 784, 798 (9th Cir.1985), cert. denied, 475 U.S. 1120 (1986) (government may base its proof of willfulness on evidence indicating that defendant knew or must have known that his tax returns were false). Circumstantial evidence may suffice. Id. Thus, the handwriting expert's conclusion that it could not be established that Stine was the author of the letter does not preclude a finding of willfulness.
 
 
 27
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Stine does not contend that his failure to obey the court's order involved a personal attack on the trial judge